MILBERG LLP
JEFF S. WESTERMAN (SBN 94559)
jwesterman@milberg.com
SABRINA S. KIM (SBN 186242)
skim@milberg.com
One California Plaza
300 S. Grand Avenue, Suite 3900
Los Angeles, California 90071
Telephone: (213) 617-1200
Facsimile:  (213) 617-1975

GIRARD GIBBS LLP
ERIC H. GIBBS (SBN 178658)
ehg@girardgibbs.com
DYLAN HUGHES (SBN 209113)
DAVID STEIN (SBN 257465)
601 California Street, 14th Floor
San Francisco, California  94104
Telephone: (415) 981-4800
Facsimile:  (415) 981-4846

*Proposed Lead Counsel*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: Facebook Privacy Litigation | CASE NO. C 10-02389 JW<br><br>CLASS ACTION<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF REQUEST TO:**<br><br>**(1) Consolidate the Zynga Actions as the <u>In re: Zynga Litigation</u>**<br><br>**(2) Appoint O'Hara & Bryant Lead Plaintiffs**<br><br>**(3) Appoint Milberg LLP and Girard Gibbs LLP Lead Counsel** |
| THIS DOCUMENT ALSO RELATES TO: | |
| Graf v. Zynga Game Network, Inc. | CASE NO. 10-4680 |
| Albini v. Zynga Game Network, Inc., et al. | CASE NO. 10-4723 |

| Gudac et al. v. Zynga Game Network, Inc. | CASE NO. 10-4793 |
| Schreiber  v. Zynga Game Network, Inc. | CASE NO. 10-4794 |
| Swanson v. Zynga Game Network, Inc. | CASE NO. 10-4902 |
| Carmel-Jessup v. Facebook, Inc., et al. | CASE NO. 10-4930 |
| Phee et al. v. Facebook Inc., et al. | CASE NO. 10-4935 |
| Bryant et al. v. Facebook, Inc. et al. | CASE NO. 10-5192 |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL ALLEGATIONS .................................................................................................... 3

ARGUMENT ............................................................................................................................ 3

    I.     CONSOLIDATION OF THE ZYNGA ACTIONS IS APPROPRIATE AND
          WILL PROMOTE EFFICIENCY ............................................................................ 3

    II.    THE ZYNGA ACTIONS SHOULD NOT BE CONSOLIDATED WITH THE
          FACEBOOK LITIGATION ...................................................................................... 5

    III.   PLAINTIFFS O'HARA AND BRYANT SHOULD BE APPOINTED LEAD
          PLAINTIFFS ............................................................................................................ 6

    IV.   MILBERG AND GIRARD GIBBS SHOULD BE APPOINTED LEAD
          COUNSEL ................................................................................................................ 7

          A.     Milberg and Girard Gibbs Meet The Rule 23(g)(1)(A) Requirements ............... 8

CONCLUSION ........................................................................................................................ 15

### TABLE OF AUTHORITIES

**Case**                                            **Page**

*Firemen's Ins. Co.  v. Keating*,
    753 F. Supp. 1137 (S.D.N.Y. 1990) .................................................................... 4

*Four in One Co. v. SK Foods, L.P.*,
    No. 2:08-cv-03017, 2009 U.S. Dist. LEXIS 28657 (E.D. Cal. Mar. 19, 2009) ........................ 7

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................................................... 7

*Huene v. United States*,
    743 F.2d 703 (9th Cir. 1984) ............................................................................. 4

*In re Apple & ATTM Antitrust Litig.*,
    No. C 07-05152, 2010 U.S. Dist. LEXIS 98270 (N.D. Cal. July 8, 2010) ............................. 7

*In re Consol. Parlodel Litig.*,
    182 F.R.D. 441 (D.N.J. 1998) ........................................................................... 6

*In re Rite Aid Corp. Sec. Litig.*,
    269 F. Supp. 2d 603 (E.D. Pa. 2003) ................................................................. 11

*Investors Research Co. v. U.S. Dist. Court for the Cent. Dist. of Cal.*,
    877 F.2d 777 (9th Cir. 1989) ............................................................................. 4

*Kreek v. Wells Fargo & Co.*,
    No. C 08-01830 WHA (N.D. Cal. Nov. 12, 2008) .................................................. 12

*L'Ottavo Ristorante v. Ingomar Packing Co.*,
    No. 09-cv-1945 MCE (E.D. Cal. Nov. 7, 2009) .................................................... 12

*Parkinson v. Hyundai Motor Am.*,
    No. SACV 06-345, 2006 U.S. Dist. LEXIS 59055 (C.D. Cal. Aug. 7, 2006) ...................... 7, 8

*Petrie v. Elec. Game Card, Inc.*,
    No. SACV 10-0252, 2010 U.S. Dist. LEXIS 56283 (C.D. Cal. June 4, 2010) .......................... 5

*Tumbling v. Merced Irrigation Dist.*,
    No. CV F 08-1801, 2010 U.S. Dist. LEXIS 32561 (E.D. Cal. Apr. 1, 2010) ............................ 6

**<u>Statutes</u>**

Cal. Bus. & Prof. Code § 17200 ........................................................................... 4, 13

Fed. R. Civ. P. 23(g) ................................................................................ 2, 7, 8, 11

Fed. R. Civ. P. 42 ........................................................................................... 1, 3, 4

TABLE OF AUTHORITIES

**PRELIMINARY STATEMENT**

Pursuant to the Court's November 12, 2010, Order, Plaintiffs William J. O'Hara and Karen Bryant (collectively the "Plaintiffs"), move to consolidate the seven "Zynga Actions" listed below, separately from the *In re: Facebook Privacy Litigation* also pending before this Court.  Plaintiffs also ask the Court to appoint them Lead Plaintiffs and to appoint their counsel, Milberg LLP ("Milberg") and Girard Gibbs LLP ("Girard Gibbs"), as Lead Counsel.

Over the last five weeks, the following cases were filed and remain pending against Zynga Game Network, Inc. ("Zynga"):

| Filing Date | Case Name |
|---|---|
| 10/18/2010 | *Graf v. Zynga Game Network, Inc.*, No. 3:10-cv-04680 (N.D. Cal.) |
| 10/19/2010 | *Albini v. Zynga Game Network, Inc.*, No.3:10-cv-04723 (N.D. Cal.) |
| 10/22/2010 | *Gudac v. Zynga Game Network, Inc.*, No. 3:10-cv-04793 (N.D. Cal.) |
| 10/22/2010 | *Schreiber v. Zynga Game Network, Inc.*, No. 3:10-cv-04794 (N.D. Cal.) |
| 10/28/2010 | *Swanson v. Zynga Game Network, Inc.*, No. 5:10-cv-04902 (N.D. Cal.) |
| 11/01/2010 | *Phee v. Facebook, Inc. et al.*, No. 3:10-cv-04935 (N.D. Cal.) |
| 11/16/2010 | *Bryant v. Facebook, Inc. et al.*, No. 5:10-cv-05192 (N.D. Cal.) |

The Zynga Actions should be consolidated together since they have the same factual underpinnings and allege overlapping legal claims.  Fed. R. Civ. P. 42.  The Zynga Actions allege that Zynga improperly sent personal information about people playing Zynga games to outside companies. The significant issues in the Zynga Actions will be whether Zynga transmitted users' private data to third parties, and if so, whether Zynga breached its user agreement and privacy policy, or violated federal or state law.  Consolidating these nearly identical cases against Zynga will promote efficient case prosecution and avoid inconsistent rulings.

Also pending before this Court is the *In re: Facebook Privacy Litigation*, No. C 10-02389-JW (the "Facebook Litigation").  While the Facebook Litigation also involves allegations that consumers' information was shared with outside companies, important differences militate against consolidating the Zynga Actions and the Facebook Litigation.

Notably, the Facebook Litigation, initiated several months before the first Zynga Action was filed, does not involve Zynga, Zynga's games, or Zynga's alleged transmission of Zynga players' information.  Instead, the Facebook Litigation involves allegations that Facebook breached its own

1

contract and privacy policy with its users.  In other words, liability in the Zynga Actions turns on Zynga's conduct, namely, its transmission of user data to third-party companies, while, in contrast, the Facebook Litigation is limited to questions arising from Facebook's potential liability, including whether Facebook breached its own user agreement and privacy policy.  The cases are being prosecuted on behalf of different, although overlapping, proposed classes, and will trigger differing discovery obligations.  Additionally, as Lead Counsel's investigation continues, the likelihood is that the Zynga Actions will grow to include additional defendants, while the Facebook Litigation is not likely to expand to include additional defendants.  We thus recommend that the Court not consolidate the two sets of cases at this time, and possibly revisit the issue once a Zynga Consolidated Complaint is filed or as these cases otherwise develop.

Facebook may express concern about its current status as a defendant in two of the Zynga Actions.  Based on Plaintiffs' ongoing investigation and the post-filing discussions between their counsel, with other Plaintiffs' counsel, and with counsel for Zynga and Facebook, Plaintiffs in the two Zynga Actions believe removing Facebook as a defendant will simplify and expedite the Zynga Actions without compromising the class's interests.  Plaintiffs therefore do not presently expect to name Facebook in a Consolidated Zynga Complaint, *see* Declaration of Jeff Westerman, ¶ 4, Declaration of Eric H. Gibbs, ¶ 4, and, once the Court appoints Lead Counsel and a Consolidated Zynga Complaint is filed, Plaintiffs do not believe anyone will advocate consolidating the two sets of cases.  Thus, while it was important for the Court to prompt examination of the consolidation question, it appears premature to consolidate while the pleadings, parties and counsel are not settled, particularly when coordination presents a more efficient course.

After ruling on consolidation, the Court should appoint Plaintiffs as Lead Plaintiffs and appoint Milberg and Girard Gibbs as Lead Counsel pursuant to Fed. R. Civ. P. 23(g).  Plaintiffs are typical of other members of the class and will more than adequately protect their interests.  Milberg and Girard Gibbs are well-regarded firms with a strong California presence.  Each have successfully prosecuted many consumer class actions, including before this Court, and otherwise meet the Rule 23(g) criteria.  By limiting leadership to two California firms with strong and proven track records in complex federal court practice, the Court will maximize the efficiencies that the federal courts expect and demand,

eliminate any unnecessary duplication of effort between counsel, reduce the costs associated with prosecuting this case, and conserve the Court's limited resources.

## FACTUAL ALLEGATIONS

Zynga develops games that are played online, including on social networks such as Facebook. ¶ 1. (The references to "¶" in this section are references to paragraphs in the *Phee* Complaint filed November 1, 2010.)  When a person wants to play a Zynga game on Facebook's website, they are told that information about them—including the unique number assigned to them by Facebook (their "Facebook ID")—will be sent to Zynga.  After agreeing, they can begin playing the Zynga game. According to the Zynga Actions' allegations, once Zynga players begin playing the Zynga games and clicking on advertisements, Zynga allows outside advertising companies to see the players' Facebook IDs.  The Zynga Actions claim this violates Zynga's contract and privacy policy, ¶¶ 4-12, and federal and state law.  ¶ 13.  The Facebook Litigation, on the other hand, involves claims that Facebook, separate and apart from Zynga and Zynga games, also may have leaked some of its users' Facebook IDs to outside companies, though the same outside companies may not be involved in both cases.

## ARGUMENT

Given the nearly identical parties and claims in the Zynga Actions, Plaintiffs follow the guidance of the Manual for Complex Litigation (4th ed. 2004) (the "Manual") and ask the Court to consolidate the related Zynga Actions.  Because of important differences between the Zynga Actions and the Facebook Litigation, Plaintiffs submit that the actions should not be consolidated with one another but should instead be coordinated to the extent necessary to ensure efficiency.  Finally, Plaintiffs seek appointment of O'Hara and Bryant as Lead Plaintiffs and Milberg and Girard Gibbs as Lead Counsel.

**I.      CONSOLIDATION OF THE ZYNGA ACTIONS IS APPROPRIATE AND WILL PROMOTE EFFICIENCY**

Rule 42 of the Federal Rules of Civil Procedure provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceeding therein as may tend to avoid unnecessary costs or delay.

District courts have broad discretion to consolidate cases. *Investors Research Co. v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989). District courts may consolidate cases for purposes of discovery and pre-trial proceedings only. *See Firemen's Ins. Co. v. Keating*, 753 F. Supp. 1137, 1141 (S.D.N.Y. 1990). In deciding whether to consolidate actions under Rule 42(a), the court must balance the savings of time and effort consolidation will produce against any inconvenience, delay, or expense that it would cause. *Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984).

In order to advance judicial economy and the efficient prosecution of the litigation, the Zynga Actions should be consolidated because they allege nearly identical factual allegations and many of the same or similar legal claims, seek to proceed on behalf of the same classes, and seek the same relief.

The following table summarizes the common allegations:

| ALLEGATION / CLAIM | ACTION AND COMPLAINT PARAGRAPH | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | *GRAF* | *ALBINI* | *GUDAC* | *SCHREIBER* | *SWANSON* | *CARMEL-JESSUP* | *PHEE* | *BRYANT* |
| Zynga is required to protect its users' information from unauthorized disclosure to others | 85, 86, 88 | 14, 32, | 1, 2 | 1 | 23, 24 | 31-33 | 12 | 21 |
| Zynga transmits its users' information without their consent when they click on advertisements | 2, 19, 25 | 14, 15, 39, 40, 50, 51 | 1-5, 25, 26, 29, 37-40 | 1, 15, 17-20 | 2, 3, 18-21 | 34, 37 | 13, 16 | 23 |
| The information revealed can be used by advertisers to gather personal information about the user | 87, 88 | 14, 40 | 3 | | 21 | 20, 34 | 14, 15, 2, 3 | 25 |

Furthermore, the Zynga Actions each assert unjust enrichment, breach of contract, and violations of Cal. Bus. & Prof. Code § 17200 and the Stored Communications Act.

Although Plaintiffs' originally named Facebook as a defendant in their respective Zynga Actions, based on their ongoing investigation and their post-filing discussions with each other, with other Plaintiffs' counsel, and with Zynga's and Facebook's counsel, Plaintiffs do not presently expect to name Facebook in a Consolidated Zynga Complaint. *See* Declaration of Jeff Westerman, ¶ 4;

4

Declaration of Eric H. Gibbs, ¶ 4.  Even if Facebook were not dismissed from the Zynga Actions, however, separate consolidation of the Zynga Actions remains appropriate.  *See, e.g., Petrie v. Elec. Game Card, Inc.*, No. SACV 10-0252, 2010 U.S. Dist. LEXIS 56283, at *9 (C.D. Cal. June 4, 2010) (consolidating cases with nearly identical allegations when there was an additional defendant in one).

## II.   THE ZYNGA ACTIONS SHOULD NOT BE CONSOLIDATED WITH THE FACEBOOK LITIGATION

While the two sets of actions undeniably share surface similarities because both involve Facebook IDs and privacy issues, and there is an overlap among the putative classes, a closer look reveals important differences that would undermine the benefits of consolidation.

The Zynga Actions and the Facebook Litigation present different questions of law and fact.  The primary question in the Facebook Litigation is whether Facebook violated its own Terms of Service, Privacy Policy, and other representations to users.  Also relevant will be the circumstances in which Facebook revealed its users' information and whether Facebook profited by doing so.

The Zynga Actions, on the other hand, are focused almost exclusively on the conduct of Zynga and on the contracts between Zynga and those who play Zynga games.  Thus, the issues in the Zynga Actions include:

> 1)   Whether Zynga transmitted its users' information to advertisers;
>
> 2)   Whether Zynga violated its contract or privacy policy (and federal and state laws), and, if so, whether Zynga is liable to Plaintiffs and class members; and
>
> 3)   Whether Zynga profited from its transmission of private user information, and whether it ought to be disgorged of its profits.

The contract issues that will arise in the Zynga Actions will be distinct from those in the Facebook Litigation.  First, Zynga and Facebook's contracts and privacy policies are materially different from one another's.  For example, the following (unenforceable) terms in Zynga's contract are absent from Facebook's: (i) a waiver of rights to seek injunctive or equitable relief; (ii) a requirement that users first attempt to negotiate disputes with Zynga; and (iii) a one-year statute of limitations for claims and causes of action against Zynga.  Second, whereas interpretation of Zynga's contract will be central to the Zynga Actions, interpretation of the Facebook contract will not.  Facebook's privacy policy tells users

they should refer to the privacy policies of developers such as Zynga for information about developers' use of their information, noting Facebook "do[es] not guarantee that they will follow our rules." Third, while the classes overlap, there are consumers who are members of the proposed Zynga class who are not members of the proposed Facebook class, and vice versa.

In sum, although there are similarities that justify relating and coordinating the Zynga Actions and Facebook Litigation, liability in the Zynga Actions will turn largely on Zynga's conduct, while liability in the Facebook Litigation will turn largely on Facebook's conduct. The considerable differences between the Zynga Actions and the Facebook Litigation warrant separation of the actions. *Tumbling v. Merced Irrigation Dist.*, No. CV F 08-1801, 2010 U.S. Dist. LEXIS 32561, at *12 (E.D. Cal. Apr. 1, 2010) citing *In re Consol. Parlodel Litig.*, 182 F.R.D. 441, 447 (D.N.J. 1998).

Cases can be consolidated at any time. If future developments show the two sets of cases are more similar than presently believed, they can be consolidated at that time. More likely, the distinctions between the cases will grow more apparent as time goes on. And, the discovery directed to Facebook in the two cases will differ, but if Facebook is concerned about potential inefficiencies arising from two sets of discovery obligations, the parties can coordinate their activities to address Facebook's concerns. In other words, in lieu of consolidation, the attorneys can coordinate discovery and other matters to further efficiency and avoid any potential duplication, as is common place in these cases.

While Plaintiffs O'Hara and Bryant believe the differences support keeping the Zynga Actions and Facebook Litigation unconsolidated, they also note that although the Facebook Litigation has been pending for 5 months, it does not appear (at least from the docket) that there has been much activity in the case. Accordingly, should the Court decide to consolidate the two sets of cases, the Lead Plaintiff and Lead Counsel suggestions made by Plaintiffs O'Hara and Bryant would remain the same, as the proposed Lead Plaintiffs and Lead Counsel are ready and able to work diligently on behalf of the classes regardless of the Court's decision on consolidation.

### III.   PLAINTIFFS O'HARA AND BRYANT SHOULD BE APPOINTED LEAD PLAINTIFFS

The Orders the Court entered on November 15 and 19, 2010, invited motions for the appointment of lead plaintiffs and lead counsel. Lead plaintiffs must be typical of absent class members

6

PLAINTIFFS' MEMORANDUM ISO REQUEST TO (1) CONSOLIDATE ZYNGA ACTIONS, (2) APPOINT O'HARA & BRYANT LEAD PLAINTIFFS, AND (3) APPOINT MILBERG & GIRARD GIBBS LEAD COUNSEL
CASE NO. C 10-02389-JW

and able to adequately represent class members' interests. *See generally In re Apple & ATTM Antitrust Litig.*, No. C 07-05152, 2010 U.S. Dist. LEXIS 98270, at *43 (N.D. Cal. July 8, 2010) ("representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical") (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

As set out in their accompanying Joint Declaration, Plaintiffs believe O'Hara and Bryant are well suited to serve as Lead Plaintiff.  (The Joint Declaration is also made by Plaintiffs Phee and Brock who both support the proposed leadership structure.)  Plaintiffs O'Hara and Bryant are typical of the class, because during the Class Period both played Zynga games on Facebook's website and clicked on advertisements while doing so. *See Phee* Complaint at ¶ 20 and *Bryant* Complaint at ¶ 27.  O'Hara and Bryant will both more than adequately represent the proposed class.  They understand that their responsibilities are to protect the interests of all class members, actively participate in the litigation, and supervise counsel. *See* Joint Declaration at ¶ 5.  Mr. O'Hara is a sophomore university student at Northeastern University in Boston, majoring in finance and accounting.  Ms. Bryant is a project management professional working in a contract position with a major bank in San Francisco and serves as Director of Volunteers for the local chapter of an international professional association.

## IV.  MILBERG AND GIRARD GIBBS SHOULD BE APPOINTED LEAD COUNSEL

 "The court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3).  The Advisory Committee Notes provide that Rule 23(g)(3) enables the appointment of interim class counsel because before class certification (1) it will usually be important for an attorney to take action to prepare for the certification decision, including taking discovery, (2) it may also be important to make or respond to motions before certification, and (3) settlement may be discussed before certification.

When appointing interim class counsel, it is generally accepted that the considerations set out in Rules 23(g)(1)(A) and (B), which "governs appointment of class counsel once a class is certified, apply equally to the designation of class counsel before certification." *See Four in One Co. v. SK Foods, L.P.*, No. 2:08-cv-03017, 2009 U.S. Dist. LEXIS 28657, at *7-8 (E.D. Cal. Mar. 19, 2009).  "Rule 23(g) provides criteria to consider when appointing class counsel, without distinguishing interim counsel.  Presumably the same factors apply, however." *Parkinson v. Hyundai Motor Am.*, No. SACV 06-345,

2006 U.S. Dist. LEXIS 59055, at *2 (C.D. Cal. Aug. 7, 2006) (appointing Eric Gibbs of Girard Gibbs class counsel).

Rule 23(g)(1)(A) specifies that, in appointing class counsel, the court must consider:

(i)    the work counsel has done in identifying or investigating potential claims in the action;

(ii)   counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii)  counsel's knowledge of the applicable law; and

(iv)   the resources that counsel will commit to representing the class.

Plaintiffs propose that the following two firms serve as Lead Counsel, which, as described below, would satisfy the requirements of Fed. R. Civ. P. 23(g)(1)(A):

MILBERG LLP
One California Plaza
300 S. Grand Avenue, Suite 3900
Los Angeles, California 90071
(213) 617-1200

GIRARD GIBBS LLP
601 California Street, 14th Floor
San Francisco, California  94104
(415) 981-4800

Plaintiffs acknowledge that an Executive Committee composed of additional counsel may also be appropriate in this action and therefore may seek the Court's authorization to appoint such a committee at a later time.

### A.    Milberg and Girard Gibbs Meet The Rule 23(g)(1)(A) Requirements

**First**, Milberg and Girard Gibbs have aggressively identified and investigated the claims brought against Facebook and Zynga.  *See* Decl. of Jeff S. Westerman, ¶ 4; Decl. of Eric H. Gibbs, ¶ 4.  Both firms have independently invested substantial time and resources to identify and investigate the facts alleged in their clients' complaints.  The firms have also interviewed a number of Facebook and Zynga users, investigated the technological aspects of the cases, and reviewed studies, reports, and articles and consulted with experts concerning the underlying conduct.  *Id.*  Milberg and Girard Gibbs's attorneys have also performed the legal research necessary to understand and develop a strategy for the issues likely to arise during the litigation.  *Id.*  Milberg and Girard Gibbs have demonstrated a commitment to investigating and aggressively pursuing all avenues of recoveries for class members.

1   **Second**, Milberg and Girard Gibbs have extensive experience in class actions and complex

2   litigation, especially in the field of consumer protection.  *See* Decl. of Jeff S. Westerman, Ex. A (firm

3   résumé); Decl. of Eric H. Gibbs, Ex. B (firm résumé).  Milberg and Girard Gibbs also have a good track

4   record working together and with others in large, complex cases.  *E.g., In re: Chase Bank USA, N.A.*

5   *"Check Loan" Contract Litigation*, MDL No. 2032 (N.D. Cal.) (Chesney, J.) (asserting claim for breach

6   of the covenant of good faith and fair dealing; motion to certify a nationwide class pending).

7   **Milberg LLP**

8   Milberg has achieved outstanding recoveries for wronged consumers, businesses, and investors,

9   totaling over $50 billion since the firm's inception.  Importantly, Milberg has also successfully

10   prosecuted a number of consumer class actions, including in California, such as *In re NVIDIA GPU*

11   *Litig.*, No. C 08-04312 (N.D. Cal.); *Messick v. Pioneer Elecs. (USA), Inc.,* No. BC 323499 (Cal. Super.

12   Ct., Los Angeles Cnty.); and *Mikhail v. Toshiba America Information Systems, Inc.*, No. BC 278163

13   (Cal. Super. Ct., Los Angeles Cnty.).

14   Milberg's California partners are also well suited to this case.  Mr. Westerman oversees the

15   *Nvidia GPU* litigation and as reflected in his accompanying biography, is active in complex litigation in

16   California and moderates panels of lawyers and judges on the topic.  *See* Decl. of Jeff S. Westerman,

17   Ex. C (2010 Complex Court Symposium).  Ms. Sabrina Kim is a former California Assistant Attorney

18   General for consumer protection and has extensive experience in public and private prosecution of

19   consumer actions.

20   In *In re NVIDIA GPU Litigation*, Milberg's California office represented, before this Court, a

21   consumer class on behalf of purchasers of defective notebook computers. The Court  preliminarily

22   certified a class for settlement purposes, and has preliminarily approved a settlement.  The case was

23   resolved with only two motion-to-dismiss hearings (the second of which included the class certification

24   hearing), some status conferences, and discovery was completed with only one motion to compel, which

25   related to privilege and work-product issues.  This case demonstrates Milberg's ability to efficiently

26   achieve good results for its clients in complex class cases.

27   **Girard Gibbs LLP**

28   Attorneys in Girard Gibbs's San Francisco office currently serve as lead and co-lead class

9

counsel in a number of prominent consumer protection cases across the country.  One example is *In re Mercedes-Benz Tele Aid Litigation*, MDL No. 1914, where the New Jersey District Court certified a nationwide class arising from Mercedes's failure to disclose that certain safety equipment installed in consumers' vehicles would soon stop working.  *See* 257 F.R.D. 46, 75 (D.N.J. 2009).  Girard Gibbs also serves as interim class counsel in the *In re Intel Laptop Battery Litigation*, No. 09-CV-02889-JW, pending before this Court.

Girard Gibbs's current leadership roles stem from its many past successes representing consumers in class actions.  Many of these cases have involved technology and privacy issues, akin to those at issue here:

- *Smith v. The Regents of the Univ. of Cal.*, No. RG08-410004 (Cal. Super. Ct., Alameda Cnty.) (Class Counsel) (this pending class action involves allegations that confidential medical information was transmitted in violation of privacy laws—the court certified the class and denied defendants' motion for summary judgment).

- *In re PayPal Litig.*, No. CV-02-01227-JF-PVT (N.D. Cal.) (Co-lead Counsel) (Girard Gibbs helped obtain injunctive relief and a $14 million settlement in this class action involving PayPal's restriction of consumers' access to their accounts and electronic funds transfers).

- *In re iPod Cases*, JCCP No. 4355 (Cal. Super. Ct., San Mateo Cnty.) (Co-Lead Counsel) (Judge Beth L. Freeman praised Girard Gibbs and co-counsel as having provided "significant and substantial benefit" for the class and describing counsel as "extremely well qualified.").

- *In re Sony BMG CD Techs. Litig.*, No. 1:05-cv-09575-NRB (S.D.N.Y.) (Co-Lead Counsel) (in a class action involving digital rights management software and the Computer Fraud and Abuse Act, Girard Gibbs helped bring the class a settlement providing both cash compensation and substantial injunctive relief).

The firm's history of representing consumer classes reflects not only the ability to deliver positive, efficient results, *see Browne v. Am. Honda Motor Co.*, No. 09-cv-06750 (C.D. Cal.) (final approval of $150 cash reimbursements to a class of more than 700,000 people achieved less than one year after filing suit), but also the firm's expertise with complex and cutting-edge privacy and technology issues, *see also In re America Online, Inc. Version 5.0 Software Litig.*, MDL No. 1341 (S.D. Fla.) (Co-lead Counsel) (Girard Gibbs served as co-lead counsel in MDL proceedings which centralized

45 class actions and featured the Computer Fraud and Abuse Act and consumer protection statutes—settlement valued at over $15 million).

Girard Gibbs has a demonstrated record of commitment to high standards of practice in federal courts. As reflected on the firm's résumé, Girard Gibbs has served in a leadership capacity in a number of complex, precedent-setting actions in federal courts. One of the firm's partners, Daniel Girard, served on the United States Judicial Conference Advisory Committee on the Rules of Civil Procedure. As a member of the Civil Rules Advisory Committee, Mr. Girard was an active participant in the development of the e-discovery amendments that took take effect in 2007.

**Third**, Milberg and Girard Gibbs have the resources required to lead this complex litigation for as long as it takes to achieve meaningful recovery for the class. *See* Fed. R. Civ. P. 23(g)(1)(A)(ii).

Milberg has over 70 lawyers with a variety of professional backgrounds, including former judges, professors, prosecutors, private defense attorneys, and government lawyers. Decl. of Jeff S. Westerman, ¶ 8. Milberg's professional staff also includes a team of full-time investigators, who are managed by a 27-year veteran of the Federal Bureau of Investigation, and four full-time forensic accountants. *Id.* In one case, Milberg's investigative team assisted counsel in being "at least eighteen months ahead of the United States Department of Justice in ferreting out" challenged unlawful conduct. *In re Rite Aid Corp. Sec. Litig.*, 269 F. Supp. 2d 603, 611 (E.D. Pa. 2003).

Milberg also has a team of in-house electronic discovery experts, assets likely to be of particular importance in a case against an operator of online network services. Decl. of Jeff S. Westerman, ¶ 8. This in-house discovery capability provides the attorneys on the case with immediate access and control over the discovery process not available with outside vendors, and will keep costs down. *Id.*

Girard Gibbs is also committed to technology and has substantial technology resources to support the litigation, including complex litigation software tools that allow the firm to litigate a case of any size and scope. Decl. of Eric H. Gibbs, ¶ 9. The firm likewise has San Francisco facilities capable of accommodating large meetings of counsel. *Id.* Finally, the fact that the firm has been selected as outside counsel by decision makers at public pension funds and corporations is compelling evidence that Girard Gibbs is well qualified to serve as interim class counsel in this matter.

**Fourth**, Milberg and Girard Gibbs have already allocated, and will continue to allocate, all

PLAINTIFFS' MEMORANDUM ISO REQUEST TO (1) CONSOLIDATE ZYNGA ACTIONS, (2) APPOINT O'HARA &
BRYANT LEAD PLAINTIFFS, AND (3) APPOINT MILBERG & GIRARD GIBBS LEAD COUNSEL
CASE NO. C 10-02389-JW

resources necessary to successfully prosecute this matter, including the investigative, forensic accountant, and other professional resources noted above.  Decl. of Jeff S. Westerman, ¶ 4, 8; Decl. of Eric H. Gibbs, ¶ 9.  Milberg's staying power is demonstrated by its track record and is reflective of its resources.  For example, in early 2010, Milberg, as lead trial counsel in a four-month trial, won a plaintiffs' verdict in a securities class action against French media conglomerate Vivendi, S.A.  Milberg, with co-counsel, had litigated the case since 2002.  The litigation involved a review of over 4 million pages of documents, many of which had to be translated from French, and depositions of over 60 witnesses, many of which occurred overseas.  Milberg is ready to commit the same level of resources to this litigation.  The primary Milberg partner assigned to the case will be Mr. Westerman, who is Milberg's senior partner in its Los Angeles office and  is before this Court in the *Nvidia GPU* case. Decl. of Jeff S. Westerman, ¶ 5.  Mr. Westerman's professional biography is attached as part of Milberg's firm resume.

Girard Gibbs's history as class counsel demonstrates that the firm has consistently devoted the significant human and financial resources necessary to represent the interests of the class.  The primary Girard Gibbs partner assigned to the case will be Eric Gibbs, who will continue to commit his and his firm's professional and other necessary resources to prosecute this case efficiently and expeditiously through pre-trial, trial, and any appeals that may arise.  Decl. of Eric H. Gibbs, ¶ 9.   As Girard Gibbs's resume reflects, Mr. Gibbs lectures on consumer class actions, is the co-chair and editor of the Quarterly Newsletter for the Class Action Litigation Group of the American Association for Justice (AAJ), is a member of the Board of Governors of the Consumer Attorneys of California, and is a Northern California *Super Lawyer*.  *Id.*

**Fifth**, The proposed leadership structure has the support of other law firms in this litigation, each of which has substantial consumer litigation experience. These firms are:

**Reese Richman LLP**.  Reese Richman LLP has been appointed class counsel in numerous class actions and recognized by courts for its experience and professionalism.  *See, e.g., Kreek v. Wells Fargo & Co.*, No. C 08-01830 WHA (N.D. Cal. Nov. 12, 2008) (appointing Reese Richman LLP as lead counsel in securities fraud action); *L'Ottavo Ristorante v. Ingomar Packing Co.*, No. 09-cv-1945 MCE (E.D. Cal. Nov. 7, 2009) (appointing Reese Richman LLP as class counsel and stating that Reese

12

PLAINTIFFS' MEMORANDUM ISO REQUEST TO (1) CONSOLIDATE ZYNGA ACTIONS, (2) APPOINT O'HARA &
BRYANT LEAD PLAINTIFFS, AND (3) APPOINT MILBERG & GIRARD GIBBS LEAD COUNSEL
CASE NO. C 10-02389-JW

Richman LLP is "well established and capable of providing quality representation to Plaintiffs in this matter"). Reese Richman LLP specializes in class actions involving high-tech Internet issues such as that involved here, and have worked with some of the leading experts in the field. *E.g.*, *Chin v. RCN Corp.*, No. 08-cv-7349 RJS, 2010 U.S. Dist. LEXIS 96302, at *1 (Reese Richman LLP served as class counsel in action involving allegations of adverse network management practices utilized by ISP). The attorneys of Reese Richman LLP have worked well with both Milberg and Girard Gibbs in successfully resolving past class actions and are prepared to do so again in this litigation. *See* Decl. of Jeff S. Westerman, Ex. B (Reese Richman LLP resume).

**Cohen Milstein Sellers & Toll PLLC**. Cohen Milstein has more than 35 years of experience litigating some of the nation's most complicated class actions and has recovered billions of dollars of damages for injured plaintiffs. In 2002, 2003, 2004, and 2006, the National Law Journal named Cohen Milstein one of the top plaintiffs' firms in the nation. The firm's practice is devoted to prosecuting major, nationwide class actions on behalf of injured parties. The firm has more than 55 attorneys, with offices in Washington, D.C., New York, Philadelphia, and Chicago. Cohen Milstein has served as lead counsel on many important class actions cases, including the following:

- *In re Google Street View Elec. Commc'ns Litig.*, No. 5-10-MD-02184 JW (N.D. Cal.). Selected interim co-lead counsel against Google, alleging the systematic and illegal interruption of private Internet communications. Plaintiffs allege violation of the Federal Wiretap Statute and California Business and Professional Code § 17200, *et seq*.

- *Keithly v. Intelius*, No. 09-01485 (W.D. Wa.). Co-Lead Counsel. Class action against Intelius, Inc. in which plaintiffs allege that defendants surreptitiously transferred plaintiffs' private billing information, including credit card numbers and other information required to process electronic payments, to third parties as part of a post-transaction marketing scheme. Plaintiffs' claims arise from the Electronic Communications Privacy Act/Stored Communications Act (18 U.S.C. § 2701) and the Washington Consumer Protection Act.

- *Dukes v. Wal-Mart Stores, Inc.*, Case No. C-01-2252 (N.D. Cal.). Co-Lead Counsel. Judge Martin Jenkins ruled that six current and former Wal-Mart employees may represent 1.5 million current and former female employees of Wal-Mart in a nationwide sex discrimination class action lawsuit. As the largest civil rights class action ever certified against a private employer, the Judge described the case as "historic in nature, dwarfing other employment discrimination cases that came before it."

13

*See* Decl. of Eric H. Gibbs, Ex. B (Cohen Milstein Sellers & Toll PLLC resume).

**Friedman Law Offices, PLLC**.  Philip Friedman, managing member of Friedman Law Offices, is listed in the Bar Register of Preeminent Lawyers, Maryland Super Lawyers and the District of Columbia Super Lawyers.  His work obtaining substantial judgments on behalf of consumers and in advocating privacy rights has been prominently featured in the *Wall Street Journal*, *Washington Post*, and elsewhere.  He has long been involved with privacy rights and currently serves as a board member of the Electronic Privacy Information Center (www.epic.org), the nation's leading advocate of Internet privacy rights.  Mr. Friedman has served as lead counsel in numerous consumer class actions, including *Burch v. United Cable Television of Baltimore*, No. 953111038/CL204287 (Cir. Ct. Balt. City 1999); *Bassin v. District Cablevision*, No. 94 CA11754 (Supr. Ct. D.C.); *Chmil v. Telecomms., Inc.*, No. 95 CH 11993 (Cir. Ct. Cook Ct., IL); *Marzelek v. Multimedia*, No. LKA 97-0285 (Cir. Ct. Kane County, IL); *Marshall v. Mile High Cable Partners, L.P.*, No. 95 C.V. 5195 (D. Ct. Denver County, CO); and *Littel v. Telecomms. Inc.*, No. 55D01 9709-CP-00415 (Cir. Ct. Morgan County, IN); all of which resulted in recoveries and/or substantial equitable relief for the respective plaintiff classes. *See* Decl. of Eric H. Gibbs, Ex. C (Friedman Law Offices PLLC resume).

//
//
//
//
//
//
//
//
//
//
//
//
//

14

1

## <u>CONCLUSION</u>

2

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) consolidate the

3

Zynga Actions, (2) appoint O'Hara and Bryant Lead Plaintiffs, and (3) appoint Milberg and Girard

4

Gibbs as Lead Counsel.

5

6

DATED: November 22, 2010

MILBERG LLP
JEFF S. WESTERMAN

7

SABRINA S. KIM

8

*/s/ Jeff S. Westerman*

9

JEFF S. WESTERMAN

10

One California Plaza

11

300 S. Grand Avenue, Suite 3900
Los Angeles, CA  90071

12

Telephone: (213) 617-1200

13

Facsimile:  (213) 617-1975
E-mail: jwesterman@milberg.com

14

skim@milberg.com

15

MILBERG LLP

16

PETER E. SEIDMAN
ANDREI V. RADO

17

One Pennsylvania Plaza, 49th Floor
New York, NY 10119

18

Telephone: (212) 594-5300

19

Facsimile:  (212) 868-1229
E-mail: pseidman@milberg.com

20

arado@milberg.com

21

22

23

24

25

26

27

28

PLAINTIFFS' MEMORANDUM ISO REQUEST TO (1) CONSOLIDATE ZYNGA ACTIONS, (2) APPOINT O'HARA &
BRYANT LEAD PLAINTIFFS, AND (3) APPOINT MILBERG & GIRARD GIBBS LEAD COUNSEL
CASE NO. C 10-02389-JW

GIRARD GIBBS LLP
ERIC H. GIBBS
DYLAN HUGHES
DAVID STEIN

*/s/ Eric H. Gibbs*
ERIC H. GIBBS

601 California Street, 14th Floor
San Francisco, California  94104
Telephone: (415) 981-4800
Facsimile:  (415) 981-4846
E-mail:  ehg@girardgibbs.com,
dsh@girardgibbs.com,
ds@girardgibbs.com

REESE RICHMAN LLP
MICHAEL R. REESE
KIM RICHMAN
875 Avenue of the Americas, 18th Floor
New York, NY 10001
Telephone: (212) 579-4625
Facsimile: (212) 253-4272
E-mail:  mreese@reeserichman.com

COHEN MILSTEIN SELLERS
 & TOLL PLLC
ANDREW N. FRIEDMAN
afriedman@cohenmilstein.com
DANIEL A. SMALL
STEPHANIE RAMIREZ
1100 New York Avenue NW
Suite 500, West Tower
Washington, DC, 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

PLAINTIFFS' MEMORANDUM ISO REQUEST TO (1) CONSOLIDATE ZYNGA ACTIONS, (2) APPOINT O'HARA &
BRYANT LEAD PLAINTIFFS, AND (3) APPOINT MILBERG & GIRARD GIBBS LEAD COUNSEL
CASE NO. C 10-02389-JW

FRIEDMAN LAW OFFICES, PLLC
PHILIP S. FRIEDMAN
psf@consumerlawhelp.com
2401 Pennsylvania Avenue N.W., Suite 410
Washington D.C. 20037
Telephone: (202) 293-4175
Fax: (202) 318-0395

*Attorneys for Plaintiffs William O'Hara, Karen Bryant, Iris Phee, and Christopher Brock*