1   COOLEY LLP
    MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
2   MATTHEW D. BROWN (196972) (brownmd@cooley.com)
    JAMES M. PENNING (229727) (jpenning@cooley.com)
3   101 California Street
    5th Floor
4   San Francisco, CA  94111-5800
    Telephone:    (415) 693-2000
5   Facsimile:    (415) 693-2222

6   Attorneys for Defendant FACEBOOK, INC.

7

8                 UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                      SAN JOSE DIVISION

11

|    |    |
|----|----|
| 12 IN RE: FACEBOOK PRIVACY<br>LITIGATION | Case No. 10-cv-02389-JW |
| 13 | **FACEBOOK, INC.'S MOTION TO DISMISS**<br>**CONSOLIDATED CLASS ACTION COMPLAINT** |
| 14 | |
| 15 | **F.R.C.P. 12(b)(1) & 12(b)(6)** |
| 16 | Date:        March 28, 2011 |
| 17 | Time:        9:00 a.m.<br>Courtroom: 8 (4th Floor) |
| 18 | Judge:       Hon. James Ware<br>Trial Date:   Not Yet Set |

19

20

21

22

23

24

25

26

27

28

TABLE OF CONTENTS

PAGE

NOTICE OF MOTION AND MOTION TO DISMISS ................................................. 1

STATEMENT OF RELIEF SOUGHT ...................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ......................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 2

I.      INTRODUCTION .................................................................................... 2

II.     STATEMENT OF FACTS ......................................................................... 3

III.    APPLICABLE STANDARDS ..................................................................... 5

IV.     ARGUMENT ........................................................................................... 6

        A.      Plaintiffs Do Not Have Article III Standing Because the Complaint Does
                Not Allege Actual Injury and, at Best, Alleges Nothing More than
                Conjectural or Hypothetical Risk of Future Harm. ................................. 6

        B.      Plaintiffs Fail to State a Claim for Violation of Either Title I or Title II of
                the Electronic Communications Privacy Act ("ECPA") (Counts I and II). ........... 8

                1.      The Complaint does not allege a disclosure of the "contents of a
                        communication." ......................................................................... 10

                2.      The Complaint fails to overcome the "addressee or intended
                        recipient" exception to liability. .................................................. 12

                3.      The Complaint does not allege that Plaintiffs' profile pages
                        contained any information that was not accessible to the public. ......... 13

        C.      Plaintiffs Fail to State a Claim for Violation of California Business and
                Professions Code § 17200 (Count III). ................................................. 14

                1.      Plaintiffs do not have standing to bring the present action. ............... 14

                2.      Plaintiffs have not sufficiently alleged that Facebook has acted
                        "unlawfully" in violation of § 17200.. ......................................... 16

                3.      Plaintiffs have not sufficiently alleged that Facebook acted
                        "fraudulently" in violation of § 17200. ....................................... 16

                4.      Plaintiffs have not sufficiently alleged that Facebook acted
                        "unfairly" in violation of § 17200. ............................................. 17

        D.      Plaintiffs Fail to State a Claim for Violation of California Penal Code
                § 502 (Count IV). ............................................................................. 18

                1.      Facebook has not knowingly accessed or caused to be accessed
                        Plaintiffs' computers or data without permission. ......................... 19

                2.      Facebook has not knowingly used or caused to be used computer
                        services or introduced a computer contaminant without permission. ....... 20

        E.      Plaintiffs' Consumer Legal Remedies Act ("CLRA") Claim Must Be
                Dismissed Because They Are Not "Consumers" Under the CLRA
                (Count V). ..................................................................................... 21

        F.      Plaintiffs' Breach of Contract Claim Must Be Dismissed for Failure to
                Allege Plaintiffs Have Suffered, or are Likely to Suffer, Any Actual
                Damages As a Result of a Breach (Count VI). ...................................... 22

TABLE OF CONTENTS
(CONTINUED)

PAGE

G.    Plaintiffs Fail to State a Claim Under California Civil Code §§ 1572 and
       1573 (Count VII) .................................................................................................. 23

H.    Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law (Count VIII). ...... 24

V.    CONCLUSION ................................................................................................................. 25

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii.

FACEBOOK, INC.'S MOTION TO DISMISS
CASE NO. 10-CV-02389-JW

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Amburgy v. Express Scripts, Inc.*,
  671 F. Supp. 2d 1046 (E.D. Mo. 2009).................................................................. 15

*Animal Legal Defense Fund v. Mendes*,
  160 Cal. App. 4th 136 (2008) ..................................................................... 14, 15

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009)..................................................................................... 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................... 6, 22

*Berryman v. Merit Property Management, Inc.*,
  152 Cal. App. 4th 1544 (2007) .......................................................................... 22

*Buckland v. Threshold Enters., Ltd.*,
  155 Cal. App. 4th 798 (2007) ........................................................................... 15

*Californians for Disability Rights v. Mervyn's, LLC*,
  39 Cal. 4th 223 (2006) .................................................................................. 14

*Camacho v. Auto. Club of S. Cal.*,
  142 Cal. App. 4th 1394 (2006) .......................................................................... 18

*Cel-Tech Commc'ns., Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) .................................................................................. 18

*Chrisman v. City of Los Angeles*,
  155 Cal. App. 4th 29 (2007) ........................................................................ 18, 19

*Crispin v. Christian Audigier, Inc.*,
  717 F. Supp. 2d. 965 (C.D. Cal. 2010) .................................................................. 11

*Daugherty v. Am. Honda Motor Co., Inc.*,
  144 Cal. App. 4th 824 (2006) ........................................................................... 14

*Davis v. Ford Motor Credit Co. LLC*,
  179 Cal. App. 4th 581 (2009) ........................................................................... 18

*Doe v. Chao*,
  540 U.S. 614 (2004)...................................................................................... 23

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii.

**FACEBOOK, INC.'S MOTION TO DISMISS**
**CASE NO. 10-CV-02389-JW**

TABLE OF AUTHORITIES
(CONTINUED)

PAGE(S)

*Drum v. San Fernando Valley Bar Ass'n*,
  182 Cal. App. 4th 247 (2010) ............................................................... 18

*Dyer v. Nw. Airlines Corps.*,
  334 F. Supp. 2d 1196 (D.N.D. 2004) ..................................................... 23

*Facebook, Inc. v. Power Ventures, Inc.*,
  No. C 08-05780 JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010) ...................... 19

*First Commercial Mortg. Co. v. Reece*,
  89 Cal. App. 4th 731 (2001) ................................................................. 22

*Fortaleza v. PNC Fin. Servs. Group, Inc.*,
  642 F. Supp. 2d 1012 (N.D. Cal. 2009) ................................................... 16

*Freedman v. America Online, Inc.*,
  325 F. Supp. 2d 638 (E.D. Va. 2004) ................................................. 11, 12

*Freedman v. America Online, Inc.*,
  412 F. Supp. 2d 174 (D. Conn. 2005) ..................................................... 12

*GA Escrow, LLC v. Autonomy Corp. PLC*,
  No. C 08-01784 SI, 2008 WL 4848036 (N.D. Cal. Nov. 7, 2008) .................. 24, 25

*Gautier v. Gen. Tel. Co.*,
  234 Cal. App. 2d 302 (1965) ................................................................. 22

*Gerlinger v. Amazon.com Inc.*,
  311 F. Supp. 2d 838 (N.D. Cal. 2004) ..................................................... 24

*In re GlenFed, Inc. Sec. Litig.*,
  42 F.3d 1541 (9th Cir. 1994) ................................................................. 16

*Jessup-Morgan v. America Online, Inc.*,
  20 F. Supp. 2d 1105 (E.D. Mich. 1998) ............................................. 10, 11

*In re JetBlue Airways Corp. Privacy Litig.*,
  379 F. Supp. 2d 299 (E.D.N.Y 2005) ................................................. 15, 23

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ............................................................... 23

*Konop v. Hawaiian Airlines, Inc.*,
  302 F.3d 868 (9th Cir. 2002) ................................................................... 9

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv.

FACEBOOK, INC.'S MOTION TO DISMISS
CASE NO. 10-CV-02389-JW

1

2

**TABLE OF AUTHORITIES**
**(CONTINUED)**

PAGE(S)

3

4

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ........................................................................... 15

5

*Lee v. Capital One Bank*,
   No. C 07-4599, 2008 WL 648177 (N.D. Cal. Mar. 5, 2008) ...................... 7

6

7

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
   350 F.3d 1018 (9th Cir. 2003)..................................................................... 6

8

9

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)............................................................................... 6, 15

10

*Mayfield v. United States*,
   599 F.3d 964 (9th Cir. 2010)....................................................................... 8

11

12

*Melchior v. New Line Prods, Inc.*,
   106 Cal. App. 4th 779 (2003) ................................................................... 24

13

14

*Moore v. Kayport Package Express, Inc.*,
   885 F.2d 531 (9th Cir. 1989)..................................................................... 16

15

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001)....................................................................... 5

16

17

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
   96 F.3d 1151 (9th Cir. 1996)..................................................................... 24

18

19

*Parrino v. FHP, Inc.*,
   146 F.3d 699 (9th Cir.1998)........................................................................ 6

20

*People v. Gentry*,
   234 Cal. App. 3d 131 (1991)..................................................................... 18

21

22

*Quintero Family Trust v. OneWest Bank, F.S.B.*,
   No. 09-cv-1561, 2010 WL 392312 (S.D. Cal. Jan. 27, 2010) ................... 16

23

24

*Quon v. Arch Wireless Operating Co. Inc.*,
   529 F.3d 892, *rev'd on other grounds*, 130 S. Ct. 2619 (2010)............... 11

25

26

*Ruiz v. Gap, Inc.*,
   540 F. Supp. 2d 1121 (N.D. Cal. 2008),
   *aff'd*, No. 09-15971, 2010 WL 2170993 (9th Cir. May 28, 2010) ..... 15, 22, 23, 24

27

28

*Sanders v. Apple, Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009) ........................................................ 7

TABLE OF AUTHORITIES
(CONTINUED)

PAGE(S)

*Schauer v. Mandarin Gems of California, Inc.*,
 125 Cal. App. 4th 949 (2005) ............................................. 21

*In re Silicon Graphics, Inc. Sec. Litig.*,
 970 F. Supp. 746 (N.D. Cal. 1997) ...................................... 16

*Small v. Fritz Co.*,
 30 Cal. 4th 167 (2003) ....................................................... 24

*Snow v. DirecTV, Inc.*,
 450 F.3d 1314 (11th Cir. 2006)............................................ 13

*Steel Co. v. Citizens for a Better Env't*,
 523 U.S. 83 (1998) ............................................................... 5

*Swanson v. USProtect Corp.*,
 No. C 05-602 JF (HRL), 2007 WL 1394485 (N.D. Cal. May 10, 2007)............................... 24

*Swartz v. KPMG LLP*,
 476 F.3d 756 (9th Cir. 2007)................................................ 6

*Theofel v. Farey-Jones*,
 359 F.3d 1066 (9th Cir. 2004)............................................. 11

*Thompson v. Home Depot, Inc.*,
 No. 07-cv-1058, 2007 WL 2746603 (S.D. Cal. Sept. 18, 2007)...................................... 15, 24

*Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*,
 594 F.2d 730 (9th Cir. 1979)................................................ 5

*Troyk v. Farmers Group, Inc.*,
 171 Cal. App. 4th 1305 (2009) .......................................... 15

*Two Jinn, Inc. v. Gov't Payment Serv., Inc.*,
 No. 09CV2701 JLS (BLM), 2010 WL 1329077 (S.D. Cal. Apr. 1, 2010) ............................. 7

*U.S. v. Kennedy*,
 81 F. Supp. 2d 1103 (D. Kan. 2000) .................................. 12

*United States v. N.Y. Tel. Co.*,
 434 U.S. 159 (1977)............................................................ 11

*Vess v. Ciba-Geigy Corp. USA*,
 317 F.3d 1097 (9th Cir. 2003)......................................... 16, 17

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi.

FACEBOOK, INC.'S MOTION TO DISMISS
CASE NO. 10-CV-02389-JW

# TABLE OF AUTHORITIES
## (CONTINUED)

PAGE(S)

*Viacom Int'l Inc. v. YouTube Inc.*,
  253 F.R.D. 256 (S.D.N.Y. 2008) ........................................................................ 11

*Walker v. Geico Gen. Ins. Co.*,
  558 F.3d 1025 (9th Cir. 2009)............................................................................. 14

*Whiteside v. Tenet Healthcare Corp.*,
  101 Cal. App. 4th 693 (2001) ............................................................................. 16

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990)......................................................................................... 6, 7

**STATUTES**

15 U.S.C. § 45(n) ................................................................................................. 18

18 U.S.C.
  § 2510 ................................................................................................................ 8
  § 2510(8) .......................................................................................................... 10
  § 2510(12) .......................................................................................................... 9
  § 2510(15) .......................................................................................................... 9
  § 2511(2)(g)(i) .............................................................................................. 9, 13
  § 2511(3)(a) ....................................................................................... 8, 9, 10, 12
  § 2511(3)(b)(ii) ............................................................................................. 9, 13
  § 2701 ................................................................................................................ 8
  § 2702 .............................................................................................................. 10
  § 2702(a) .................................................................................... 9, 10, 11, 12
  § 2702(a)(1) ................................................................................ 9, 10, 11, 12
  § 2702(a)(2) ................................................................................ 9, 10, 11, 12
  § 2702(a)(3) ..................................................................................................... 11
  § 2702(b)(1) ....................................................................................................... 9
  § 2702(b)(3) ................................................................................................. 9, 13
  § 2702(c)(1) ..................................................................................................... 11
  § 2702(c)(6) ............................................................................................... 11, 12
  § 2703 .............................................................................................................. 11
  § 2703(c) ..................................................................................................... 11, 12
  § 2703(c)(2) ................................................................................................. 11, 12

Cal. Bus. & Prof. Code
  § 17200 ..................................................................................................... passim
  § 17204 ............................................................................................................ 14

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vii.

FACEBOOK, INC.'S MOTION TO DISMISS
CASE NO. 10-CV-02389-JW

1

**TABLE OF AUTHORITIES**
**(CONTINUED)**

2

**PAGE(S)**

3

Cal. Civ. Code
    § 1572 ............................................................................................................ 23
    § 1573 ............................................................................................................ 23
    § 1750 ................................................................................................ 8, 16, 21
    § 1761(d) ........................................................................................................ 21

Cal. Penal Code
    § 502 ........................................................................................................ passim
    § 502(a)(4) ..................................................................................................... 20
    § 502(a)(10) ................................................................................................... 20
    § 502(c) .................................................................................................... 18, 19
    § 502(c)(1) ............................................................................................... 19, 20
    § 502(c)(2) ............................................................................................... 19, 20
    § 502(c)(3) ..................................................................................................... 20
    § 502(c)(6) ............................................................................................... 19, 20
    § 502(c)(7) ............................................................................................... 19, 20
    § 502(c)(8) ............................................................................................... 20, 21
    § 502(e)(1) ..................................................................................................... 19

**OTHER AUTHORITIES**

U.S. Const. art. III .......................................................................................... passim

Federal Rule of Civil Procedure
    9(b) ................................................................................................... 16, 17, 23
    12(b)(1) ............................................................................................................ 5
    12(b)(6) ......................................................................................................... 5, 6

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

viii.

FACEBOOK, INC.'S MOTION TO DISMISS
CASE NO. 10-CV-02389-JW

1   **NOTICE OF MOTION AND MOTION TO DISMISS**

2   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3     PLEASE TAKE NOTICE that on March 28, 2011 at 9:00 a.m. or as soon thereafter as this

4   motion may be heard in the above-entitled court, located at 280 South First Street, San Jose,

5   California, in Courtroom 8 (4th Floor), Defendant Facebook, Inc. ("Facebook") will move to

6   dismiss the Consolidated Class Action Complaint (the "Complaint") filed by Plaintiffs.

7   Facebook's Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6)

8   and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and

9   Authorities, the Request for Judicial Notice, the Declaration of Ana Yang and accompanying

10   Exhibits filed herewith, and all pleadings and papers on file in this matter, and upon such other

11   matters as may be presented to the Court at the time of the hearing or otherwise.

12   **STATEMENT OF RELIEF SOUGHT**

13     Facebook seeks an order, pursuant to Federal Rule of Civil Procedure 12(b)(1), dismissing

14   Plaintiffs' Complaint for lack of subject matter jurisdiction.  Facebook also seeks an order

15   dismissing each of the Complaint's eight causes of action for failure to state a claim upon which

16   relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

17   **STATEMENT OF ISSUES TO BE DECIDED**

18     1.  Because Plaintiffs fail to allege an injury-in-fact that gives them standing under

19   Article III of the United States Constitution, should the Complaint be dismissed?

20     2.  Because Plaintiffs fail to state a claim upon which relief can be granted for each

21   cause of action—alleging violation of 18 U.S.C. § 2702(a), 18 U.S.C. § 2511(3)(1), Cal. Bus. &

22   Prof. Code § 17200, Cal. Penal Code § 502(c), Cal. Civil Code § 1750, and Cal. Civil Code

23   §§ 1572 & 1573, breach of contract, and unjust enrichment—should the Complaint be dismissed?

24

25

26

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.      INTRODUCTION**

3         Facebook is a social networking website that enables users ("Users") to connect and share

4    with other Users and the world around them.  Facebook Users can, among other features, connect

5    to others by finding Facebook "friends" and create profile pages where they can post content they

6    want to share, such as vacation photos, news about their day, or opinions about world events.

7    Facebook assigns a generic numerical "User ID" (e.g., 123456789) to each User.  In addition,

8    some Users elect to create a Facebook "Username"—a nickname selected by the User for the

9    purpose of creating a unique public Internet address for the User's Facebook profile.  Facebook

10   is, and has always been, a free and voluntary service.

11        Plaintiffs bring this putative class action against Facebook based on allegations that User

12   IDs or Usernames were transmitted by Users' third-party web browsers—not by Facebook—to

13   advertisers when Users clicked on advertisements.  The Complaint alleges—incorrectly—that

14   advertisers could have used this information to navigate to Users' profile pages and see all

15   information (including both publicly accessible information and information configured to be

16   accessible to a more limited audience) that Users chose to share on their profile.  The Complaint

17   is rife with allegations and accusations regarding Facebook's practices, promises, and motives.

18   Despite the rhetoric, the Complaint acknowledges, as it must, that any transmission of Internet

19   addresses or "URLs" that purportedly contained User IDs or Usernames to advertisers results

20   from the standard operation of Users' web browsers (whether someone is using Facebook or any

21   other website).  As is standard on the Internet, whenever a User clicks on a link and is directed to

22   a new website, the new site may receive a host of technical information from the User's web

23   browser (such as Microsoft's Internet Explorer), including the Internet address or URL of the

24   website last visited by that User (commonly referred to as the "referrer URL" or "referrer

25   header").  Here, the Complaint alleges merely that when a Facebook User clicked on an

26   advertisement on Facebook, the User's browser may have transmitted the Internet address of the

27   site that the User was viewing on Facebook, which may or may not have contained the User's

28   numerical User ID or Username.

Significantly, Plaintiffs do not make a single allegation that any information specific to the named Plaintiffs was disclosed to an advertiser via a referrer header or otherwise—much less that Plaintiffs were in any way harmed by any such disclosure. Instead, the Complaint relies on unsupported allegations about Users generally and hypothetical or conjectural harms.

Plaintiffs' claims should be dismissed for lack of standing and for failure to state a claim. Plaintiffs do not have standing under Article III of the United States Constitution because they have not alleged "injury-in-fact." The Complaint contains generalized and hypothetical allegations concerning Users generally but contains no allegations that the particular named Plaintiffs have suffered any actual injury. Additionally, each of Plaintiffs' claims fails as a matter of law because the Complaint does not and cannot allege facts that would support each cause of action.

## II.    STATEMENT OF FACTS[1]

Facebook operates one of the most popular social networking websites in the world, with over 500 million active Users. (Compl. ¶ 11.) It allows anyone with access to a computer and an Internet connection to create a profile page where they can share content and updates about their activities. (*Id.* ¶¶ 12, 14.)

Users do not pay a fee to use Facebook. (Compl. ¶ 12.) Instead, Facebook earns revenue by selling advertising space to third parties. (*See id.* ¶¶ 16-19.) Facebook displays the third-party advertisements that are placed by advertisers on its service, based on anonymous criteria specified by the advertiser (*e.g.*, age, gender, home state). (*See id.*)

Facebook assigns a generic, numerical "User ID" to each User for internal operational purposes. Until May 2010, the User ID associated with a User's profile on Facebook may have been contained in the technical Internet address (the "URL"[2]) for a User's profile page on Facebook (e.g., http://www.facebook.com/profile.php?id=123456789), to allow Facebook to display the correct information on that page. (*Id.* ¶ 33.) In addition, some Facebook Users elect

---

[1] This Statement of Facts is based on the allegations in the Complaint, which Facebook assumes as true for purposes of this motion but which Facebook does not thereby admit.

[2] A "URL," or "Uniform Resource Locator," specifies the location of a webpage or file on the Internet.

to create a unique Facebook "Username" (a nickname or alias of the User's choosing), for the purpose of providing a personalized, public Internet address for their Facebook profile page.  (*Id.* ¶ 15.)  In such cases, the User's chosen "Username" (and not Facebook's User ID) would appear in the technical Internet address for the User's profile.  (*Id.* ¶ 33.)

The Complaint alleges that Internet addresses containing Facebook User IDs or Users' Usernames were transmitted to advertisers by Users' web browsers' "referrer header" function. (*Id.* ¶ 35.)  As the Complaint acknowledges, this is a "standard web browser function" effected by Users' third-party web browsers—not Facebook—that occurs on websites throughout the Internet.  (*See id.*)  Indeed, the Complaint concedes that the referrer header function has been "provided by standard web browsers since . . . May 1996" (before Facebook even existed).  (*Id.*) The "Referrer Header [function] reveals the specific web page address" (the URL) a User was viewing when he or she clicked on an advertisement posted on Facebook's website.  (*Id.* ¶ 28.) The Complaint further alleges that in some, unspecified instances "users' browsers [] sen[t] Referrer Header transmissions" to advertisers that contained the Facebook User ID or Username of the User who clicked on the advertisement, as well as the page the User was viewing just prior to clicking on the advertisement.  (*Id.*)  The Complaint also claims—incorrectly—that an advertiser could use the User ID or Username to collect additional information about the User by navigating to the Facebook User's profile page to view any information the User had posted there.  (*Id.* ¶ 29.)

As is plainly disclosed in Facebook's Privacy Policy and Statement of Rights and Responsibilities (relied on by Plaintiffs in their Complaint), a User's name (among other things) is public information that is available to everyone on the Internet.  (Declaration of Ana Yang ("Yang Decl."), filed herewith, Ex. A ¶ 4 (SRR), Ex. B ¶ 3 (Privacy Policy), Ex. C ¶ 2 (Privacy Guide).)[3]

---

[3] What the Complaint alternatively refers to as the "Statement of Rights and Responsibilities" (Compl. ¶¶ 22, 26), "Terms and Conditions" (*id.* ¶¶ 38, 101), "Terms of Use" (*id.* ¶ 26), and "Terms of Service" (*id.* ¶ 41(b)), Facebook formally refers to as the "Statement of Rights and Responsibilities."  On the Facebook website, the SRR is also sometimes referred to as "Terms." (Yang Decl. ¶ 2, Ex. A.)

Plaintiffs assert general allegations that Facebook shared "personally identifiable information" with advertisers. (Compl. ¶¶ 1, 3, 27.) Conspicuously, the Complaint does not identify what, if any, of the named Plaintiffs' information was actually disclosed. The only allegation specific to Plaintiffs is that they "clicked on at least one third-party advertisement displayed on Facebook" during the "relevant time period." (*Id.* ¶¶ 5, 6.) Plaintiffs do not identify the "relevant time period" when they purportedly clicked on an advertisement, anything specific about the advertisement, or what information was allegedly disclosed by their actions. Also, Plaintiffs do not allege that any advertiser ever used the unspecified information it allegedly received to gather any personal information, much less any information specific to the named Plaintiffs.

Plaintiffs state as legal conclusions that they have "suffered irreparable injury," "suffered harm," and "suffered loss." (*Id.* ¶¶ 93, 98, 120; *see also id.* ¶¶ 92, 97, 109.) But the Complaint does not aver that any of Plaintiffs' information has been disclosed or that such disclosure resulted in any actual injury. The closest Plaintiffs come is a general, hypothetical allegation of the potential for advertisers to obtain "confidential and sometimes highly sensitive information" about a User. (*Id.* ¶ 32.)

## III.   APPLICABLE STANDARDS

A court may dismiss a claim under Federal Rule of Civil Procedure 12(b)(1) based on lack of subject matter jurisdiction, and the motion may attack either the Complaint on its face or the existence of subject matter jurisdiction in fact. *See Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 732-33 (9th Cir. 1979). If a complaint does not establish standing under Article III of the U.S. Constitution, a federal court does not have subject matter jurisdiction to hear the case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998).

A court may dismiss a claim under Rule 12(b)(6) when "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In deciding a motion under Rule 12(b)(6), "all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them." *Id.* However, as the Supreme Court recently emphasized, "labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not" survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). A plaintiff must therefore plead "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949.

Also, "to '[p]revent[] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting . . . documents upon which their claims are based,'" a court may consider a writing referenced in a complaint but not incorporated therein if the complaint relies on the document and its authenticity is unquestioned. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir.1998)).[4]

## IV.   ARGUMENT

### A.   Plaintiffs Do Not Have Article III Standing Because the Complaint Does Not Allege Actual Injury and, at Best, Alleges Nothing More than Conjectural or Hypothetical Risk of Future Harm.

To have Article III standing to maintain an action in federal court, a plaintiff bears the burden of alleging facts sufficient to establish (a) an "injury-in-fact," (b) that the injury was caused by the challenged conduct, and (c) that a favorable decision can address the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The injury-in-fact must be "concrete in both a qualitative and temporal sense." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). Plaintiffs must "allege an injury to [themselves] that is 'distinct and palpable' as opposed to merely 'abstract,' and the alleged harm must be actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* (citations omitted). In a class action, each named plaintiff must establish that they, "personally, have been injured" and thus have standing to bring the cause of action. *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1020 (9th Cir. 2003) (citation omitted). In

---

[4] As discussed in the Request for Judicial Notice filed herewith, the Complaint references Facebook's Statement of Rights and Responsibilities (SRR), Privacy Policy, and Privacy Guide (Compl. ¶¶ 20-26), which, under applicable legal principles, the Court may properly consider in ruling on this motion. Copies of these three documents are attached as Exhibits A through C to the Yang Declaration, filed herewith.

order to meet this requirement at the pleading stage, Plaintiffs must include allegations sufficient to establish injury-in-fact to each of them individually.

Although the Complaint includes speculative assertions of possible danger that disclosing User IDs or Usernames in referrer headers may pose to Users generally, it contains no allegations that named Plaintiffs themselves have suffered actual injury or face a risk of imminent, palpable injury as a result of such a disclosure—or that any information specific to any of the named Plaintiffs was disclosed.  In fact, other than alleging that Plaintiffs "clicked on at least one third-party advertisement displayed on Facebook.com" during an undefined "relevant period," Plaintiffs make no allegations *at all* containing facts specific to themselves or their Facebook accounts.  The Complaint includes a single hypothetical situation that it alleges "***could*** have the effect of revealing to advertisers confidential and sometimes highly sensitive information, including a User's private interests."  (Compl. ¶ 32 (emphasis added).)  But Plaintiffs provide no support for this speculative claim and never allege that their own information was disclosed or that there was any resulting injury.

Courts readily dismiss claims for lack of Article III standing when, as here, a plaintiff fails to allege that it suffered any concrete or particularized injury resulting from defendants' alleged conduct.  *See, e.g., Two Jinn, Inc. v. Gov't Payment Serv., Inc.*, No. 09CV2701 JLS (BLM), 2010 WL 1329077, at *3 (S.D. Cal. Apr. 1, 2010) (dismissing claims under Cal. Bus. & Prof. Code § 17200 for lack of Article III standing, finding that the plaintiff failed to allege an "injury in fact" and that the "alleged 'injury' is mere conjecture, and is certainly not concrete or particularized"); *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 984 (N.D. Cal. 2009) (noting Article III standing has not been pled where "speculative inferences are necessary to establish either injury or the connection between the alleged injury and the act challenged"); *Lee v. Capital One Bank*, No. C 07-4599, 2008 WL 648177, at *3 (N.D. Cal. Mar. 5, 2008) (dismissal for lack of Article III standing where injury was "hypothetical" and not "actual or imminent").  Here, Plaintiffs have not and cannot allege *how* disclosure of User IDs and Usernames caused injury "that is 'distinct and palpable' as opposed to merely 'abstract,' and . . . actual or imminent, not 'conjectural' or 'hypothetical.'"  *Whitmore*, 495 U.S. at 155.

Additionally, the Complaint fails to allege any ongoing injury that would confer standing for Plaintiffs' injunctive-relief claims.  Exposure to past harms does not automatically confer standing for injunctive relief; rather, Plaintiffs must allege ongoing injury.  *See Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010).  In the instant case, however, the Complaint concedes that after May 2010, no User IDs or Usernames were transmitted to advertisers via referrer headers.  (Compl. ¶ 33.)  Thus, Plaintiffs' own allegations show there is no ongoing threat of injury, and they therefore lack standing under Article III to seek injunctive relief under California Business and Professions Code § 17200 (Compl. ¶ 84), California Penal Code § 502 (*id.* ¶ 93), and California Civil Code § 1750 (*id.* ¶ 99).

Because Plaintiffs have failed to allege injury-in-fact sufficient to confer Article III standing, the Complaint should be dismissed.

### B.     Plaintiffs Fail to State a Claim for Violation of Either Title I or Title II of the Electronic Communications Privacy Act ("ECPA") (Counts I and II).

Plaintiffs also fail to allege the most basic facts necessary to support their first two counts for violations of Title I and Title II of the ECPA, specifically any interception or disclosure of the contents of any communications.[5]

Count I of the Complaint asserts that Facebook violated 18 U.S.C. § 2511(3)(a) of the Wiretap Act.  (Compl. ¶ 54.)  Section 2511(3)(a) provides, subject to exceptions, that "a person or entity providing an electronic communication service to the public shall not intentionally divulge the contents of any communication (other than one to such person or entity, or an agent thereof) while in transmission on that service to any person or entity other than an addressee or intended

---

[5] For clarity, we refer to Count I as alleging violation of the Wiretap Act, and Count II as alleging violation of the Stored Communications Act ("SCA").  The Complaint refers to Count I as a violation of the Electronic Communications Privacy Act ("ECPA").  The ECPA, Pub. L. 99-508, 100 Stat. 1848 (1986) (codified as amended in various sections of 18 U.S.C.), was the name of legislation enacted by Congress in 1986.  Among other things, Title I of the ECPA amended the statute known as the Wiretap Act, 18 U.S.C. § 2510 *et seq.* (the subject of Count I), which generally governs the contemporaneous interception of communications while being transmitted, whereas Title II of the ECPA enacted the SCA, 18 U.S.C. § 2701 *et seq.* (the subject of Count II), which generally governs the disclosure of communications that are in storage.  Depending on context, courts and commentators sometimes use "ECPA" to refer to the legislation, the Wiretap Act, the SCA, or all three.

recipient of such communication or an agent of such addressee or intended recipient." 18 U.S.C. § 2511(3)(a). An "electronic communication service" means any service which provides to Users the ability to send or receive electronic communications. *Id.* § 2510(15). An "electronic communication" is "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." *Id.* § 2510(12). The "contents" of an electronic communication means "any information concerning the substance, purport, or meaning of that communication." *Id.* § 2510(8).

Count II of the Complaint asserts that Facebook violated 18 U.S.C. §§ 2702(a)(1) and (a)(2) of the SCA.[6] (Compl. ¶¶ 65, 66, 70.) Section 2702(a)(1) provides, subject to exceptions, that "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1). Section 2702(a)(2) provides, subject to exceptions, that "a person or entity providing remote computing service to the public shall not knowingly divulge to any person or entity the contents of any communication which is carried or maintained on that service . . . on behalf of . . . a subscriber or customer." *Id.* § 2702(a)(2).

Exceptions under both the Wiretap Act and the SCA, allow providers to divulge the contents of a communication to "an addressee or intended recipient of such communication." 18 U.S.C. §§ 2511(3)(a), 2702(b)(1). A provider may also do so with the consent of the "originator . . . of such communication," *id.* §§ 2511(3)(b)(ii), 2702(b)(3), or the "subscriber" in the case of a remote computing service under the SCA, *id.* § 2702(b)(3). Neither statute prohibits disclosure of communications if the system "is configured so that such electronic communication is readily accessible to the general public." *Id.* § 2511(2)(g)(i) (applicable to "this chapter [the Wiretap Act] or chapter 121 of this title [the SCA]").

---

[6] As to electronic communications, the same conduct cannot be a violation of both the Wiretap Act and the SCA because they are mutually exclusive—one statute addresses communications while they are in transit, and the other statute addresses communications while they are in storage. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878-79 (9th Cir. 2002) (holding that the Wiretap act protects communications during "transmission" while the SCA protects communications while "stored").

Plaintiffs' Complaint fails to state a claim under the Wiretap Act, 18 U.S.C. § 2511(3)(a), or the SCA, *id.* §§ 2702(a)(1), (a)(2) (Counts I and II, respectively).  First, User IDs and Usernames constitute, at most, "customer records" and not the "contents of a communication." Second, the Complaint does not overcome the "addressee or intended recipient" exception to liability under the statutes.  Third, the Complaint is devoid of any allegations that Facebook revealed any communications that were not accessible to the public.

> **1.    The Complaint does not allege a disclosure of the "contents of a communication."**

Plaintiffs' allegations center on disclosure of User IDs and Usernames included in referrer headers transmitted by third-party browsers to advertisers.[7]  As an initial matter, because an Internet address is not a "communication" within the intended scope of the statutes—and, instead, operates to identify the location of a webpage on the Internet—these allegations do not satisfy the threshold requirement to state a claim under the Wiretap Act or SCA.  Even if a referrer header could constitute a "communication" under the statutes, because the statutory sections at issue only prohibit the disclosure of "the *contents* of a communication" while in transmission or in electronic storage by the service provider, Facebook is not liable.  18 U.S.C. §§ 2511(3)(a), 2702(a)(1), 2702(a)(2) (emphasis added).

The "contents of a communication" means "any information concerning the substance, purport, or meaning of that communication."  18 U.S.C. § 2510(8).  Basic information such as a User ID or Username does not constitute the "contents" of a communication, but instead constitutes, at most, a User "record," which is governed by separate statutory provisions that do not prohibit disclosure.  *See Jessup-Morgan v. America Online, Inc.*, 20 F. Supp. 2d 1105, 1108 (E.D. Mich. 1998) (holding disclosure of an AOL User ID was not the "'content' of an electronic communication" under 18 U.S.C. § 2702).  The User records that were allegedly disclosed by Facebook do not reveal the substance of any private communications.  *See id.* (noting customer

---

[7] The Complaint also alleges that the referrer header sometimes reveals the webpage the User was viewing just prior to clicking on the advertisement.  (Compl. ¶ 31.)  But, as alleged in the Complaint, inclusion of the webpage being viewed is only problematic if the header also reveals a unique User ID or Username which would permit the advertiser to associate the webpage with the individual User.  (*Id.* ¶ 32.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

account information is not the content of a communication); *cf. United States v. N.Y. Tel. Co.*, 434 U.S. 159, 167 (1977) (a pen register does not reveal the "contents of communications" under the pre-ECPA Wiretap Act because it does not reveal the existence of a communication, just the telephone number).

The Wiretap Act and SCA make an unambiguous distinction between "contents of a communication" which are controlled by §§ 2702(a)(1) and (a)(2), and "customer records" which are controlled by § 2702(a)(3).   Sections 2702(a)(1) and (a)(2) are regularly applied to actual communications which by their nature contain "content."  *See Theofel v. Farey-Jones*, 359 F.3d 1066, 1073 (9th Cir. 2004) (applying § 2702(a)(2) to email messages); *Quon v. Arch Wireless Operating Co. Inc.*, 529 F.3d 892, 900 (applying §§ 2702(a)(1) and (a)(2) to text messages), *rev'd on other grounds*, 130 S. Ct. 2619 (2010); *Crispin v. Christian Audigier, Inc*., 717 F. Supp. 2d. 965, 972 (C.D. Cal. 2010) (applying §§ 2702(a)(1) and 2702(a)(2) to private messages and posts on social networking cites); *Viacom Int'l Inc. v. YouTube Inc.*, 253 F.R.D. 256, 264 (S.D.N.Y. 2008) (applying §2702(a)(2) to videos).  In contrast, § 2702(a)(3) has been applied to subscriber account information, i.e., customer records.  *See Jessup*, 20 F. Supp. 2d at 1108 (applying § 2702(a)(3) to AOL User ID); *Freedman v. America Online, Inc.*, 325 F. Supp. 2d 638, 646 (E.D. Va. 2004) (applying § 2702(a)(3) to Internet subscriber account information such as User's screen name and membership start date).

The distinction between the "contents of a communication" and a User "record" is important because the statutes place much more restrictive limits on the disclosure of the contents of communications than they do on the disclosure of User records.  For instance, under the SCA, a provider has broad discretion to disclose a customer record "to any person other than a governmental entity," 18 U.S.C. § 2702(c)(6), or to a governmental entity when authorized by § 2703, *id.* § 2702(c)(1).   Under § 2703(c), a government entity can require an electronic communication service provider or a remote computing service provider to disclose customer "records," including a User's name, address, telephone connection records, records of session times and durations, service utilization, subscriber number or identity (including temporarily assigned network address), and payment methods.  *Id.* § 2703(c)(2).   The User IDs and

Cooley LLP
Attorneys At Law
San Francisco

11.

Facebook, Inc.'s Motion to Dismiss
Case No. 10-cv-02389-JW

1   Usernames that Plaintiffs allege Facebook disclosed are, at most, analogous to a "subscriber

2   number or identity," which is specifically defined by statute as a "record," not "contents of a

3   communication."  *See id.* § 2703(c)(2); *see also U.S. v. Kennedy*, 81 F. Supp. 2d 1103, 1107-09

4   (D. Kan. 2000) (applying § 2703(c) to Internet subscriber account information, including name, e-

5   mail address, and membership history); *Freedman v. America Online, Inc.,* 412 F. Supp. 2d 174,

6   181 (D. Conn. 2005) (noting for Fourth Amendment purposes courts have "universally" held

7   there is a distinction between "the content of electronic communications, which [are] protected,

8   and non-content information, including a subscriber's screen name and corresponding identity,

9   which [are] not").  Under the express provisions of § 2702(c)(6), Facebook may disclose such

10  "records" to "any person other than a governmental entity," including a third-party advertiser.

11       As reflected in both the language and structure of the Wiretap Act and the SCA, the types

12  of information of which Plaintiffs complain (User IDs and Usernames) fall within the category of

13  User "records," not the category of "contents of communications."  Therefore, Plaintiffs fail to

14  state a claim under the Wiretap Act or the SCA, and Counts I and II should be dismissed.[8]

15           **2.      The Complaint fails to overcome the "addressee or intended recipient"
                        exception to liability.**
16

17       Under both the Wiretap Act and the SCA, a provider may divulge contents of a

18  communication to "an addressee or intended recipient of such communication."  18 U.S.C.

19  §§ 2511(3)(a), 2702(b)(1).  Plaintiffs make conclusory allegations that Facebook violated the

20  statutes by divulging information to advertisers.  (*See* Compl. ¶¶ 57, 65.)  However, the specific

21  facts Plaintiffs allege do not establish that Facebook divulged the contents of a communication

22  (as discussed above), or that any information was transmitted to anyone other than an addressee

23  or intended recipient.  Specifically, Plaintiffs allege that when a User clicks on an advertisement,

24  the User is "asking Facebook to send an electronic communication to the advertiser."  (*Id.* ¶ 56.)

25  This purported "communication" takes the form of the "Referrer Header transmission" sent by the

26  User's web browser to the advertiser.  (*Id.* ¶ 28.)  Even if the referrer header transmission by the

---

[8] Furthermore, because these claim fail, they cannot support a claim that Facebook acted "unlawfully" under California Business and Professions Code § 17200.  (*See infra* § IV.C.2.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12.

FACEBOOK, INC.'S MOTION TO DISMISS
CASE NO. 10-CV-02389-JW

browser could be deemed a communication (and as discussed above, it cannot), by Plaintiffs' own admission, the advertiser is the "addressee or intended recipient" of this purported "communication." The Wiretap Act and SCA expressly permit the contents of a communication to be sent to the "addressee or its intended recipient." Accordingly, Counts I and II should be dismissed.

> ### 3. The Complaint does not allege that Plaintiffs' profile pages contained any information that was not accessible to the public.

Both the SCA and the Wiretap Act provide that a provider shall not be liable where a communication is "readily accessible to the general public." 18 U.S.C. § 2511(2)(g)(i). And under both statutes, a provider may divulge the contents of a communication with the consent of the "originator . . . of such communication," *id.* §§ 2511(3)(b)(ii), 2702(b)(3), or the "subscriber" in the case of a remote computing service under the SCA, *id.* § 2702(b)(3).

The Complaint alleges—with no supporting facts or specific examples—that with the User ID or Username, advertisers hypothetically can navigate to a User's profile and see information posted there, such as a User's name, gender, pictures, friends, and networks. (Compl. ¶¶ 29, 70.) Plaintiffs concede that Users voluntarily provide the information posted on their profile pages for the purpose of sharing that information with others online. (*Id.* ¶¶ 12, 14.) And Plaintiffs have alleged no facts whatsoever (nor can they) that any information that could have been accessed by third parties on Plaintiffs' profiles was private or was not available to the general public. Because Plaintiffs do not point to any private communication that allegedly was divulged to an advertiser, their claims under the Wiretap Act and the SCA must be dismissed. *See* 18 U.S.C. §§ 2511(2)(g)(i), 2511(3)(b)(ii), 2702(b)(3); *see also Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1321-22 (11th Cir. 2006) (holding that information on a website that is readily accessible by the general public is not protected by the SCA and that "[t]o survive a motion to dismiss, [Plaintiff] must have alleged, at a minimum, facts from which we could infer that his electronic bulletin board was not readily accessible to the general public"). Therefore, Plaintiffs fail to state a claim under the Wiretap Act or the SCA, and Counts I and II should be dismissed.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13.

FACEBOOK, INC.'S MOTION TO DISMISS
CASE NO. 10-CV-02389-JW

**C.    Plaintiffs Fail to State a Claim for Violation of California Business and Professions Code § 17200 (Count III).**

Plaintiffs allege that Facebook violated California Business and Professions Code § 17200 *et seq.* (the Unfair Competition Law, or "UCL") by disclosing Users' personal information to third-party advertisers without Users' authorization.  (Compl. ¶ 79.)  The UCL prohibits three kinds of unfair competition: unlawful, fraudulent, and unfair practices.  *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837 (2006).  Plaintiffs do not have standing to bring a claim under the UCL and, even if they did, have not sufficiently alleged that Facebook acted unlawfully, fraudulently, or unfairly.

### 1.    Plaintiffs do not have standing to bring the present action.

In order to have standing under the UCL, Plaintiffs must allege they "suffered injury in fact and ha[ve] lost money or property as a result of such unfair competition."  Cal. Bus. & Prof. Code § 17204; *see also Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 232 (2006) ("A private plaintiff has standing under the UCL if he or she has suffered "injury in fact and has lost money or property as a result of such unfair competition.");  *Animal Legal Defense Fund v. Mendes*, 160 Cal. App. 4th 136, 145, 148 (2008).  Plaintiffs have alleged neither "lost money or property" as a result of Facebook's alleged actions nor "injury in fact."

Plaintiffs have not alleged the loss of any money or property as result of Facebook's actions.  Plaintiffs have not alleged that their personal information was obtained by advertisers (*see supra* § IV.A) or that their personal information was used in a way that caused them to suffer a loss of money or property.  And Plaintiffs do not otherwise allege that they paid or otherwise tendered money to Facebook – they cannot because Facebook is free – or that they have otherwise lost money or property as a result of Facebook's alleged conduct.    Plaintiffs' conclusory requests for "restitution" or "disgorgement" from Facebook, without a single factual allegation suggesting of loss of money or property, are insufficient to satisfy this element.  *See Walker v. Geico Gen. Ins. Co.*, 558 F.3d 1025, 1027 (9th Cir. 2009) (UCL standing is "limit[ed] . . . to individuals who suffer losses of money or property that are eligible for restitution");

Cooley LLP
Attorneys At Law
San Francisco

14.

Facebook, Inc.'s Motion to Dismiss
Case No. 10-cv-02389-JW

*Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 817 (2007); *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1148 (2003) .

Furthermore, Plaintiffs have not alleged that they have suffered "injury in fact," which requires allegations of "actual or imminent, not 'conjectural' or 'hypothetical' injury." *Troyk v. Farmers Group, Inc*., 171 Cal. App. 4th 1305 (2009) (the proposition adding the "injury in fact" requirement referred specifically to the standing requirements of the United States Constitution, which include "actual or imminent, not 'conjectural' or 'hypothetical'" injury) (quoting *Lujan,* 504 U.S. at 560-61); *Animal Legal Defense Fund,* 160 Cal. App. 4th at 145, 148 (affirming dismissal of plaintiffs' UCL claim for failure to allege that their injury was "economic, at least in part," as required for standing). Plaintiffs have made no allegations that any potential harm to them was "actual or imminent."

Furthermore, even if Plaintiffs *had* pled that Facebook provided a third party with their personal information without authorization (which they have not), such an allegation would be insufficient to plead a loss of property or money. For instance, in *Ruiz v. Gap, Inc.*, this Court held that allegations that defendant improperly disclosed plaintiff's Social Security number did not "somehow constitute[] a loss of property" sufficient to allege a violation of the UCL. *See* 540 F. Supp. 2d 1121, 1128 (N.D. Cal. 2008) (dismissing plaintiff's complaint for failure to allege any loss of property as required by § 17200), *aff'd,* No. 09-15971, 2010 WL 2170993 (9th Cir. May 28, 2010) (unpublished); *see also Thompson v. Home Depot, Inc.*, No. 07-cv-1058, 2007 WL 2746603, at *3 (S.D. Cal. Sept. 18, 2007) (rejecting plaintiff's argument that his personal information (including his name, telephone number, and signature) constituted property under the UCL and dismissing his claim).[9] Thus, even if Plaintiffs had adequately alleged that Facebook disclosed their personal information, the Complaint would not state a claim under § 17200.

---

[9] Other districts have similarly concluded release of personal information is not a loss of "property" or has no compensable value. *See Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1057-58 (E.D. Mo. 2009) (holding allegations that defendant released plaintiff's Social Security number, date of birth, and prescription medicine information did not allege a violation of Missouri's unfair practices law as it was not a loss of property); *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 303 (E.D.N.Y 2005) (stating "[t]here is no support for the proposition that an individual's [] personal information has or had any compensable value in the economy at large").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15.

FACEBOOK, INC.'S MOTION TO DISMISS
CASE NO. 10-CV-02389-JW

**2.    Plaintiffs have not sufficiently alleged that Facebook has acted "unlawfully" in violation of § 17200.**

In support of their claim under the UCL "unlawful" prong, Plaintiffs allege that Facebook violated four statutes, the Wiretap Act (what the Complaint refers to as the ECPA), the SCA, California Civil Code § 1750, and California Penal Code § 502.  (Compl. ¶ 80.)  However, as discussed herein (§§ IV.B, IV.D, IV.E), those claims must each be dismissed for failure to state a claim.  Thus, Plaintiffs' UCL "unlawful" prong claim should be dismissed for failure to state a claim.  *See Whiteside v. Tenet Healthcare Corp.*, 101 Cal. App. 4th 693, 706 (2001) (when a complaint fails to state a violation of an underlying law, a § 17200 claim premised on such an alleged violation fails to state a claim).

**3.    Plaintiffs have not sufficiently alleged that Facebook acted "fraudulently" in violation of § 17200.**

Claims brought under the "fraud" prong of the UCL must be pled with particularity under Federal Rule of Civil Procedure 9(b).  *See Fortaleza v. PNC Fin. Servs. Group, Inc*., 642 F. Supp. 2d 1012, 1020 (N.D. Cal. 2009) (holding that claims for fraudulent business practices must be pled with particularity); *Quintero Family Trust v. OneWest Bank, F.S.B.*, No. 09-cv-1561, IEG (WVG), 2010 WL 392312, at *11-12 (S.D. Cal. Jan. 27, 2010) (same); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (UCL claim, where based on fraud, must be pled with particularity).  Thus, to satisfy Rule 9(b), "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Vess*, 317 F.3d at 1106 (citations omitted).  Furthermore, "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false."  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), superseded by statute on other grounds as stated in *In re Silicon Graphics, Inc. Sec. Litig.*, 970 F. Supp. 746, 754 (N.D. Cal. 1997).  Plaintiffs must provide support for each allegation, and "mere conclusory allegations of fraud are insufficient."  *Moore v. Kayport Package Express, Inc*., 885 F.2d 531, 540 (9th Cir. 1989).

Plaintiffs' allegations do not satisfy the heightened Rule 9(b) particularity standard.  Plaintiffs allege that Facebook made statements in its Privacy Policy and in blog postings that

Cooley LLP
Attorneys At Law
San Francisco

16.

FACEBOOK, INC.'S MOTION TO DISMISS
CASE NO. 10-CV-02389-JW

Users' personal information would not be provided to third parties without consent.  (Compl. ¶¶ 20-24, 81.)  Plaintiffs further allege that these representations induced Users to submit their personal information, which Facebook knowingly transmitted to third-party advertisers.  (*Id.* ¶ 81.)  But Plaintiffs never allege with any particularity if or when Plaintiffs read the relevant terms of the Privacy Policy or the blog postings.  More importantly, the Complaint is utterly silent on whether Plaintiffs *themselves* relied on any of these alleged representations, such that Plaintiffs themselves were "induced" to post their personal information to the Facebook website.  Likewise, Plaintiffs fail to allege with specificity, as they must, how (or whether) any alleged representation was false.  Indeed, Plaintiffs do not point to a single instance where Facebook provided any personal information associated with the named Plaintiffs (or any putative class member) to a third-party advertiser in violation of its stated policies or otherwise.  Plaintiffs also fail to plead any particular facts regarding the advertisements displayed on Facebook they allegedly clicked on, including when they clicked on an advertisement, which advertisement they clicked, or which webpage they were on when they clicked it.  Without these basic facts, the Complaint lacks the particularity required to plead fraud under the UCL.

### 4.  Plaintiffs have not sufficiently alleged that Facebook acted "unfairly" in violation of § 17200.

Plaintiffs allege that Facebook "violated the unfair prong of the UCL by gaining control over and divulging to third parties its Users' [personal information] without consent and under false pretenses."  (Compl. ¶ 82.)  This allegation is insufficient in two respects.  *First*, because it alleges fraudulent conduct, as discussed above, it must be pled with particularity under Rule 9(b).  *Second*, Plaintiffs' allegations do not demonstrate "unfair" acts under § 17200.

Rule 9(b)'s heightened pleading standard applies, by its terms, to "*alleg[ations]* of fraud," not *claims* of fraud.  Thus, even "where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct."  *See Vess*, 317 F.3d at 1103-04.  Here, Plaintiffs have alleged that Facebook gained control over Users' personal information "under false pretenses."  (Compl. ¶ 82.)  Plaintiffs have not pled such circumstances with sufficient particularity.  (*See supra* § IV.C.3.)

Cooley LLP
Attorneys At Law
San Francisco

17.

Facebook, Inc.'s Motion to Dismiss
Case No. 10-cv-02389-JW

Furthermore, Plaintiffs' allegations are insufficient to state a claim under the "unfair" prong of § 17200.  California courts have held that in order to state a claim for an "unfair" business practice in the context of a UCL consumer action,[10] a plaintiff must allege facts sufficient to establish: (1) substantial consumer injury; (2) that the injury is not outweighed by countervailing benefits to consumers; and (3) that the injury is one that consumers could not reasonably have avoided.  *Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006) (referring to factors under § 5 of Federal Trade Commission Act, codified at 15 U.S.C. § 45(n)); *accord Davis v. Ford Motor Credit Co. LLC*, 179 Cal. App. 4th 581, 596 (2009).   But, as discussed above (*supra* § IV.A), Plaintiffs have not sufficiently pled *any* injury, let alone a "substantial" injury.[11]  Nor have they pled that if they were injured, it may have been avoided or that the benefit of Facebook's services to other consumers did not outweigh the injury.  Plaintiffs' claim under the unfair prong must therefore be dismissed for failure to state a claim.

### D.   Plaintiffs Fail to State a Claim for Violation of California Penal Code § 502 (Count IV).

California Penal Code § 502 was enacted to prevent the knowing unauthorized access of computer systems and theft or alteration of computer data.  *See People v. Gentry*, 234 Cal. App. 3d 131, 141 n.8. (1991).  It permits civil suit if, and only if, a computer system is accessed "without permission" (i.e., broken into) by an outsider who thereby causes the victim some damage or loss.  *See Chrisman v. City of Los Angeles*, 155 Cal. App. 4th 29, 34 (2007) ("Section 502 defines 'access' in terms redolent of 'hacking' or breaking into a computer").  "[U]sing a

---

[10] In *Cel-Tech Commc'ns., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 185 (1999), the California Supreme Court reviewed definitions of "unfair" that had been developed by lower courts and concluded they were "too amorphous and provide[d] too little guidance to courts and businesses."  The Court adopted a test for competitor actions, but did not decide what test should apply in consumer actions.  *Id.* at 186-87.

[11] After *Cel-Tech*, courts have used two other tests.  *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 256 (2010).  One requires that the unfair conduct be contrary to some legislatively declared public policy that is "tethered to specific constitutional, statutory, or regulatory provisions."  The other, essentially a pre-*Cel-Tech* test, requires that the business practice be "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and that the court "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim."  *Id.* at 256-57.  Plaintiffs fail under either test, as they allege neither a legislatively declared public policy limiting Facebook's disclosure of information voluntarily posted by Users that is "tethered to specific constitutional, statutory, or regulatory provisions" nor harm substantial enough to outweigh the utility of Facebook's services.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18.

FACEBOOK, INC.'S MOTION TO DISMISS
CASE NO. 10-CV-02389-JW

computer network for the purpose that it was designed to serve, even if in a manner that is otherwise improper, is not the kind of behavior that the legislature sought to prohibit" and does not constitute acting "without permission." *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-05780 JW, 2010 WL 3291750, at *7 (N.D. Cal. July 20, 2010).  A plaintiff may only bring a civil action under § 502—whether for compensatory damages or injunction—if he or she "suffers damage or loss" as a result of a violation of subsection (c) and they are the owner or lessee of the computer system or data.  Cal. Penal Code § 502(e)(1).  In conclusory fashion, Plaintiffs allege violation of no fewer than six subsections of § 502(c), many bordering on the absurd.  (Compl. ¶¶ 86-91.)  Plaintiffs' shotgun approach notwithstanding, the statute is inapposite to the facts alleged here, and Count IV should be dismissed for failure to state a claim.

### 1.     Facebook has not knowingly accessed or caused to be accessed Plaintiffs' computers or data without permission.

Plaintiffs do not and cannot plead facts sufficient to show Facebook knowingly accessed or caused to be accessed Plaintiffs' data, computer, computer system, or computer network without permission.[12]   To the contrary, Plaintiffs repeatedly concede that they voluntary interacted with Facebook by sharing information on Facebook's website and by clicking on advertisements displayed on Facebook.  (Compl. ¶¶ 14, 28.)  Facebook's activities as pled do not amount to the "'hacking' or breaking into a computer" that  § 502 was intended to prohibit.  *See Chrisman*, 155 Cal. App. 4th at 34.  In fact, the Statement of Rights and Responsibilities that Plaintiffs rely on for the limitations placed on what Facebook may provide to advertisers (Compl. ¶ 22) also provides Facebook with an irrevocable license to access and use any content a User posts anywhere on Facebook.  (*See* Yang Decl. Ex. B, ¶ 3.)  This license precludes any claim that Facebook accessed or used User information without permission.  Thus, Plaintiffs have not alleged Facebook "accessed" anything "without permission" under California Penal Code §§ 502(c)(1), (c)(2), (c)(6) and (c)(7).

---

[12] Plaintiffs' allegations center around the alleged transmission of User IDs and Usernames to advertisers. There are no allegations that Facebook improperly "accessed" a User's computer, computer system, or computer network, defined by the statute *i.e.* "to gain entry to, instruct, or communicate with the logical, arithmetical, or memory function resources of a computer, computer system, or computer network." Cal. Penal Code § 502(a)(1).

Cooley LLP
Attorneys At Law
San Francisco

19.

FACEBOOK, INC.'S MOTION TO DISMISS
CASE No. 10-CV-02389-JW

Plaintiffs conclusorily allege that Facebook caused unspecified personal information (data) to be accessed by advertisers based on vague and unsupported claims that advertisers *could* allegedly use the User ID or Username transmitted by the referrer header function to navigate to a User's Facebook page and collect additional personal information.  (*See id.* ¶ 29.)  This theory fails as well because Plaintiffs do not allege that any advertiser ever took these actions.  Thus, Plaintiffs have not alleged that Facebook "assist[ed] in providing" or "caus[ed]" any access of a named Plaintiffs' data, as required under California Penal Code §§ 502(c)(6) and (c)(7).

Because Plaintiffs fail to allege facts sufficient to show Facebook knowingly accessed or caused to be accessed Plaintiffs' (or any other User's) data without permission, the Court should dismiss the portion of Count IV premised on §§ 502(c)(1), (c)(2), (c)(6), and (c)(7).

### 2. Facebook has not knowingly used or caused to be used computer services or introduced a computer contaminant without permission.

Plaintiffs do not and cannot allege facts sufficient to show Facebook knowingly without permission used or caused to be used computer services in violation of § 502(c)(3).  Computer services are defined by the statute as, among other things, "computer time, data processing, or storage functions, or other uses of a computer, computer system, or computer network."  Cal. Penal Code § 502(a)(4).  While the definition is not exclusive, it focuses on various computer *uses*, a topic that is entirely missing from the Complaint.  In fact, other than the conclusory allegation that Facebook "knowingly and without permission used or caused to be used computer services" (Compl. ¶ 88), computer services are not mentioned in the Complaint.  Facebook unquestionably has the right to use its own computers, systems, and networks.  The Court should dismiss the portion of Count IV premised on § 502(c)(3).

Similarly, Plaintiffs' claim that Facebook knowingly and without permission introduced a "computer contaminant" in violation of § 502(c)(8) is not supported by any factual allegations.  Computer contaminants refer to things such as computer viruses or worms and are statutorily defined as "any set of computer instructions that are designed to modify, damage, destroy, record, or transmit information within a computer, computer system, or computer network without the intent or permission of the owner of the information."  Cal. Penal Code § 502(a)(10).  Nothing in

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20.

FACEBOOK, INC.'S MOTION TO DISMISS
CASE NO. 10-CV-02389-JW

1   Plaintiffs' allegations suggest Facebook or any third-party advertiser introduced a set of

2   instructions modifying or damaging any computer, system, or network.  In fact, other than the

3   conclusory allegation regarding the introduction of "computer instructions" (Compl. ¶ 91),

4   computer instructions are not mentioned in the Complaint.  The Court should dismiss the portion

5   of Count IV premised on § 502(c)(8).

6   The statute's own terms, definitions, and case law all contradict Plaintiffs' attempt to

7   manipulate § 502 into a broad civil action that would cover any discontented Internet User's

8   spurious claims.  The statute was designed to prevent outsiders from hacking into a computer,

9   network, or system and altering or stealing the data therein, and it simply does not apply to the

10  facts Plaintiffs allege.  Therefore, the Complaint fails to state a claim under California Penal Code

11  § 502, and Count IV should be dismissed.[13]

12  **E.      Plaintiffs' Consumer Legal Remedies Act ("CLRA") Claim Must Be
13          Dismissed Because They Are Not "Consumers" Under the CLRA (Count V).**

14  CLRA claims can only be brought by a "consumer," which is defined by the statute as "an

15  individual who seeks or acquires, *by purchase or lease*, any goods or services for personal,

16  family, or household purposes."  Cal. Civ. Code § 1761(d) (emphasis added).  Plaintiffs admit

17  that the Facebook service is free.  (Compl. ¶ 12.)  Because Facebook's service is free, by

18  definition it is not "purchased or leased" by a consumer and therefore the CLRA does not apply.

19  *See Schauer v. Mandarin Gems of California, Inc.*, 125 Cal. App. 4th 949, 960 (2005) (holding

20  non-purchaser of a ring was not "consumer" under statute who could maintain a CLRA claim);

21  *see also Berryman v. Merit Property Management, Inc.*, 152 Cal. App. 4th 1544, 1558 (2007)

22  (holding that the transfer of title and payment of escrow fees was not a "transaction" under the

23  CLRA that resulted in a purchase or lease of goods or services).[14]

24

25

---

26  [13] Furthermore, because this claim fails, it cannot support a claim that Facebook acted "unlawfully" under
    Cal. Bus. & Prof. Code § 17200.  (*See supra* § IV.C.2.)

27  [14] Moreover, because they fail to state a claim under § 1750 *et seq.*, their UCL claim predicated on breach
28  of this statute should be dismissed as well.  (*See supra* § IV.C.2.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21.

FACEBOOK, INC.'S MOTION TO DISMISS
CASE NO. 10-CV-02389-JW

1

2

     **F.     Plaintiffs' Breach of Contract Claim Must Be Dismissed for Failure to Allege Plaintiffs Have Suffered, or are Likely to Suffer, Any Actual Damages As a Result of a Breach (Count VI).**

3

     Plaintiffs must plead four elements in order to state a cause of action for breach of

4

contract: "[1] the contract, [2] plaintiffs' performance (or excuse for nonperformance), [3]

5

defendant's breach, and [4] damage to Plaintiff therefrom." *Gautier v. Gen. Tel. Co.*, 234 Cal.

6

App. 2d 302, 305 (1965).[15]  Damages are an essential element the claim.  *See First Commercial*

7

*Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001).  Further, "under California law, a breach

8

of a contract claim requires a showing of appreciable and actual damage." *Ruiz*, 622 F. Supp. 2d

9

at 917.  Plaintiffs' sole damage allegation is that "[a]s a result of the Facebook's misconduct and

10

breach of the Agreement described herein, Plaintiffs and the Class suffered injury."  (Compl. ¶

11

109.)  Conclusory allegations of harm are not enough.  *See Twombly*, 550 U.S. at 555.

12

     As discussed above (*supra* § IV.A), Plaintiffs fail to allege facts sufficient to support a

13

claim that they suffered appreciable and actual damage.  The Complaint includes general

14

allegations that certain information relating to unnamed Users, specifically, User IDs and

15

Usernames, were contained in Internet addresses that were transmitted to third-party advertisers

16

through a standard web browser function.  But the Complaint contains no plausible allegation that

17

Facebook gave any personal information to an advertiser (and, in fact, repeatedly concedes that

18

any "referrer headers" were transmitted by Users' browsers, if at all).   And the named Plaintiffs

19

do not point to a single example of Facebook giving their personal information (or any of their

20

information) to an advertiser or in any way breaching any agreement with Plaintiffs.  In fact,

21

other than the allegation that Plaintiffs have been registered Users of Facebook since at least 2008

22

and clicked on at least one third-party advertisement (Compl. ¶¶ 4-5), the complaint is devoid of

23

any facts specific to Plaintiffs.  Moreover, the Complaint contains no allegations of monetary or

24

property loss specific to Plaintiffs or any other User.

25

26

27

28

---

[15] Pursuant to the SRR, California law governs claims arising between the parties.  (Yang Decl. Ex. A, ¶ 15(1).)  Accordingly, Facebook analyzes the common-law causes of action in the Complaint (breach of contract and unjust enrichment) under California law.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22.

FACEBOOK, INC.'S MOTION TO DISMISS
CASE NO. 10-CV-02389-JW

Even if the Complaint did include allegations regarding specific personal information of Plaintiffs that had been disclosed—again, the Complaint utterly fails to do so—such disclosure, without more, would not constitute actionable damages sufficient to support a breach of contract cause of action.  Courts that have analyzed whether disclosure of personal information constitutes actionable damages for a breach of contract claim have found that it does not.  *See, e.g., Ruiz*, 622 F. Supp. 2d at 917 (under California law, "[plaintiff] cannot show he was actually damaged by pointing to his fear of future identity theft"); *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 326-27 (E.D.N.Y. 2005) (loss of privacy and deprivations of "economic value" based on disclosure of personal information did not constitute actionable damages for a breach of contract action); *Dyer v. Nw. Airlines Corps.*, 334 F. Supp. 2d 1196, 1200 (D.N.D. 2004) (dismissing breach of contract claim premised on "conclusory statements" of damage from disclosure of personal information).  This is so even if this Court were to hold that Plaintiffs have Article III standing.  *Doe v. Chao*, 540 U.S. 614, 624-25 (2004) (explaining that an individual may suffer Article III injury and yet fail to plead a proper cause of action).  Accordingly, the breach of contract claim fails as a matter of law and should be dismissed.

### G.    Plaintiffs Fail to State a Claim Under California Civil Code §§ 1572 and 1573 (Count VII).

Plaintiffs have not alleged facts sufficient to state a claim for violation of California Civil Code §§ 1572 and 1573, which define actual and constructive fraud in the formation of contracts.  As discussed above (*supra* § IV.C.3) and repeated briefly here, an action sounding in fraud must be pled with particularity under Rule 9(b) to give defendants notice of the offense and an opportunity to defend against it.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  Plaintiffs do not do so.  They fail to allege if or when they read Facebook's alleged representations; whether they relied upon them when choosing to register on Facebook or share any information; which third-party advertisements they clicked on; if they suffered any damage or harm; if so, the nature of the harm; and so on.  In short, the Complaint does not contain any particularized circumstances constituting the purported fraud that would permit Facebook to

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23.

FACEBOOK, INC.'S MOTION TO DISMISS
CASE NO. 10-CV-02389-JW

respond to or defend against Plaintiffs' fraud allegations.   Count VII should therefore be dismissed.

Also, because damages are a necessary element of any fraud claim, Plaintiffs' Complaint fails to state a claim on this ground as well.  *See Small v. Fritz Co.*, 30 Cal. 4th 167, 173-74 (2003).   Again, even if the Complaint had alleged facts specific to the named Plaintiffs, the disclosure of personal information is not a loss of property under California law.  *See Ruiz*, 540 F. Supp. 2d at 1128; *Thompson*, 2007 WL 2746603, at *3.  Nor have Plaintiffs articulated any other grounds supporting damages.  Count VII should be dismissed on this independent ground.

**H.     Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law (Count VIII).**

Plaintiffs' unjust enrichment claim should also be dismissed on the ground that there is no such independent cause of action in California.  *See, e.g., Swanson v. USProtect Corp.*, No. C 05-602 JF (HRL), 2007 WL 1394485, at *5 (N.D. Cal. May 10, 2007) (dismissing unjust enrichment claim because "there is no cause of action in California for unjust enrichment") (citing *Melchior v. New Line Prods, Inc.*, 106 Cal. App. 4th 779, 793 (2003)).  Such an improperly pled claim can only survive if the court elects to reinterpret the "unjust enrichment" claim as some alternate legal theory that would give rise to a restitutionary remedy.  *See GA Escrow, LLC v. Autonomy Corp. PLC*, No. C 08-01784 SI, 2008 WL 4848036, at *7 (N.D. Cal. Nov. 7, 2008).

Even if this Court did reinterpret Plaintiffs' claim, a complaint cannot assert unjust enrichment while simultaneously alleging breach of an express contract.   *Gerlinger v. Amazon.com Inc.,* 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004) (in California, unjust enrichment is a remedy in quasi-contract and "[a]n action based on quasi-contract cannot lie where a valid express contract covering the same subject matter exists between the parties") (citing *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996)).  This black-letter rule is fatal to Plaintiffs' unjust enrichment claim.  Here, Plaintiffs allege an express contract forming the basis for their breach of contract claim.  (*See, e.g.*, Compl. ¶¶ 26, 38, 101, 102.)  Accordingly, Plaintiffs' unjust enrichment claim must be dismissed with prejudice.  *See, e.g., Gerlinger*, 311 F. Supp. 2d. at 856 (dismissing unjust enrichment claim with prejudice because the law does not allow "a Plaintiff invoking state law to an unjust enrichment claim while also alleging an express

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24.

FACEBOOK, INC.'S MOTION TO DISMISS
CASE NO. 10-CV-02389-JW

1   contract"); *GA Escrow, LLC*, 2008 WL 4848036, at \*6-7 ("A Plaintiff cannot survive a motion to

2   dismiss an 'unjust enrichment' cause of action if the complaint also alleges tort claims and claims

3   based on the existence of a valid, express contract between the parties.").

4   **V.    CONCLUSION**

5        For the foregoing reasons, Plaintiffs lack standing to bring this action under Article III of

6   the United States Constitution and Plaintiffs fail to state a claim as a matter of law.  Accordingly,

7   the Consolidated Class Action Complaint should be dismissed.

8

9   Dated: January 10, 2011            COOLEY LLP

10

11                        /s/

12                     Matthew D. Brown (196972)
                  Attorneys for Defendant FACEBOOK, INC.

13   893362 /HN

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25.

FACEBOOK, INC.'S MOTION TO DISMISS
CASE NO. 10-CV-02389-JW