COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
MATTHEW D. BROWN (196972) (brownmd@cooley.com)
101 California Street
5th Floor
San Francisco, CA  94111-5800
Telephone:     (415) 693-2000
Facsimile:      (415) 693-2222

Attorneys for Defendant FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: FACEBOOK PRIVACY LITIGATION | Case No. 10-cv-02389-JW<br><br>**FACEBOOK, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**F.R.C.P. 12(b)(1) & 12(b)(6)**<br><br>Date:          March 28, 2011<br>Time:          9:00 a.m.<br>Courtroom:  8 (4th Floor)<br>Judge:        Hon. James Ware<br>Trial Date:   Not Yet Set |

**TABLE OF CONTENTS**

**PAGE**

I.    INTRODUCTION ...................................................................................................... 1

II.   ARGUMENT ........................................................................................................... 2

    A.    The Information Allegedly Disclosed Does Not Reveal Plaintiffs' Identities. ........................................................................................................... 2

    B.    Plaintiffs Do Not Allege Concrete and Specific Harm Sufficient to Confer Article III Standing (All Counts). ............................................................ 3

        1.    A statute's creation of a legal right does not relieve Plaintiffs of their obligation to allege specific and concrete harm showing injury-in-fact. .................................................................................. 3

        2.    Plaintiffs' "personal information" has no compensable value to them. ............................................................................................... 7

    C.    Plaintiffs' ECPA Claims Are Not Saved By Plaintiffs' New Arguments (Counts I and II). ....................................................................... 8

    D.    Plaintiffs' UCL Claim Must Be Dismissed (Count III). ......................................... 9

        1.    Plaintiffs lack UCL standing. ................................................................. 9

        2.    Plaintiffs have failed to allege "unlawful" conduct under the UCL. ........ 10

        3.    Plaintiffs have failed to allege "fraudulent" conduct under the UCL. ...... 10

        4.    Plaintiffs have failed to allege "unfair" conduct under the UCL. ............. 11

    E.    Plaintiffs Fail to State a Claim under California Penal Code § 502 (Count IV). ........................................................................................................ 12

    F.    Plaintiffs' CLRA Claim Must Be Dismissed Because Plaintiffs Are Not Consumers of Goods or Services Under the Statute (Count V). ........................... 13

    G.    Plaintiffs Fail to State a Claim for Breach of Contract (Count VI). ..................... 14

    H.    Plaintiffs Fail to State a Claim Under Cal. Civil Code §§ 1572-73 (Count VII). ...................................................................................................... 15

    I.    Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law (Count VIII). ....... 15

III.  CONCLUSION ...................................................................................................... 15

1

**TABLE OF AUTHORITIES**

2

**PAGE(S)**

3

**CASES**

4

*Amburgy v. Express Scripts, Inc.*,
5
    671 F. Supp. 2d 1046 (E.D. Mo. 2009)..................................................................10

6
*Berry v. Am. Express Publ'g, Inc.*,
    147 Cal. App. 4th 224 (2007)..............................................................................14

7
*Camacho v. Auto. Club of S. Cal.*,
8
    142 Cal. App. 4th 1394 (2006)............................................................................11

9
*Craigslist, Inc. v. Naturemarket, Inc.*,
10
    694 F. Supp. 2d 1039 (N.D. Cal. 2010) ..............................................................13

11
*Doe 1 v. AOL, LLC*,
    719 F. Supp. 2d 1102 (N.D. Cal. 2010) ...........................................................5, 6

12
*Dwyer v. Am. Express Co.*,
13
    273 Ill. App. 3d 742 (Ill. App. Ct. 1995) ..........................................................8, 13

14
*Dyer v. Nw. Airlines Corps.*,
    334 F. Supp. 2d 1196 (D.N.D. 2004) ..................................................................14
15

16
*Facebook, Inc. v. Power Ventures, Inc.*,
    No. C 08-05780 JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010)................................12, 13

17
*Fairbanks v. Super. Ct.*,
18
    46 Cal. 4th 56 (2009) ............................................................................14

19
*Ferrington v. McAfee, Inc.*,
    No. 10-CV-01455-LHK, 2010 WL 3910169 (N.D. Cal. 2010 Oct. 5, 2010) ........................14
20

21
*Fortaleza v. PNC Fin. Servs. Group, Inc.*,
    642 F. Supp. 2d 1012 (N.D. Cal. 2009) ..........................................................10, 11

22
*Gerlinger v. Amazon.com, Inc.*,
23
    311 F. Supp. 2d 838 (N.D. Cal. 2004) ..............................................................15

24
*Gladstone Realtors v. Village of Bellwood*,
    441 U.S. 91 (1979)................................................................................4
25

26
*Gordon v. Virtumundo, Inc.*,
    575 F.3d 1040 (9th Cir. 2009)....................................................................6

27
*Hepting v. AT&T Corp.*,
28
    439 F. Supp. 2d 974 (N.D. Cal. 2006) ..............................................................5

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii.

**FACEBOOK'S REPLY I/S/O MOTION TO DISMISS
CASE NO. 10-CV-02389-JW**

TABLE OF AUTHORITIES
(CONTINUED)

PAGE(S)

*Hoang v. Reunion.com, Inc.*,
No. C-08-3518 MMC, 2010 WL 1340535 (N.D. Cal. Mar. 31, 2010) ................................... 6

*In re Am. Airlines, Inc. Privacy Litig.*,
370 F. Supp. 2d 552 (N.D. Tex. 2005) .................................................................................. 9

*In re Doubleclick Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ............................................................................. 7, 13

*In re JetBlue Airways Corp. Privacy Litig.*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005) ..................................................................... 8, 10, 13, 14

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ............................................................................................. 15

*Kwikset Co. v. Super. Ct. of Orange County*,
--- Cal. Rptr. 3d ---, No. S171845, 2011 WL 240278 (Cal. Jan. 27, 2011) ........................... 9

*Lee v. Chase Manhattan Bank*,
No. C07-04732 MJJ, 2008 WL 698482 (N.D. Cal. Mar. 14, 2008) ...................................... 6

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ......................................................................................................... 4, 6

*McBride v. Boughton*,
123 Cal. App. 4th 379 (2004) .............................................................................................. 15

*Mirkin v. Wasserman*,
5 Cal. 4th 1082 (1993) ........................................................................................................ 11

*Raines v. Byrd*,
521 U.S. 811 (1997) .............................................................................................................. 4

*Robins v. Spokeo, Inc.*,
No. CV10-05306 ODW (AGRx), 2011 WL 597867 (C.D. Cal. Jan. 27, 2011) ...................... 6

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008) ............................................................................... 10

*Ruiz v. Gap, Inc.*,
622 F. Supp. 2d 908 (N.D. Cal. 2009) ................................................................................. 14

*Sisley v. Spring Communications Co., L.P.*,
284 Fed. Appx. 463 (9th Cir. 2008) ...................................................................................... 6

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii.

FACEBOOK'S REPLY I/S/O MOTION TO DISMISS
CASE NO. 10-CV-02389-JW

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE(S)

*Summers v. Earth Island Inst.*,
129 S. Ct. 1142 (2009) .................................................................................... 5

*Thompson v. Home Depot, Inc.*,
No. 07cv1058 IEG (WMc), 2007 WL 2746603 (S.D. Cal. Sept. 18, 2007) ............... 7, 10, 13

*U.S. v. Students Challenging Reg. Agency Procs. (SCRAP)*,
412 U.S. 669 (1973) ....................................................................................... 4

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ......................................................................... 11

*Warth v. Seldin*,
422 U.S. 490 (1975) ..................................................................................... 3, 4

*Whiteside v. Tenet Healthcare Corp.*,
101 Cal. App. 4th 693 (2001) .......................................................................... 10

**STATUTES**

18 U.S.C.
§ 2511(3)(b)(ii) ............................................................................................ 9
§ 2702(b)(3) ................................................................................................ 9

42 U.S.C.
§ 1983 ......................................................................................................... 4

Cal. Bus. & Prof. Code
§ 17200 ....................................................................................................... 8

Cal. Civ. Code
§ 1572 ...................................................................................................... 2, 15
§ 1573 ...................................................................................................... 2, 15
§ 1761(a) ................................................................................................... 13
§ 1761(b) ................................................................................................... 13
§ 1761(d) ................................................................................................... 13
§ 1770(a) ................................................................................................... 13

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv.

FACEBOOK'S REPLY I/S/O MOTION TO DISMISS
CASE NO. 10-CV-02389-JW

**TABLE OF AUTHORITIES**
**(CONTINUED)**

PAGE(S)

California Penal Code

§ 502 ......................................................................................................... 2, 12, 13

§ 502(a)(1) ...................................................................................................... 12

§ 502(a)(4) ...................................................................................................... 12

§ 502(a)(10) .................................................................................................... 12

§ 502(c)(1) ...................................................................................................... 12

§ 502(c)(2) ...................................................................................................... 12

§ 502(c)(3) ...................................................................................................... 12

§ 502(c)(6) ...................................................................................................... 12

§ 502(c)(7) ...................................................................................................... 12

§ 502(c)(8) ...................................................................................................... 12

**OTHER AUTHORITIES**

U.S. Const. art. III ................................................................................... passim

Federal Rule of Civil Procedure 9(b) ............................................................ 10, 11

9th Cir. R. 36-3(a) ........................................................................................... 6

I.      **INTRODUCTION**

Plaintiffs' Opposition to Facebook's Motion to Dismiss only magnifies the problems with their Complaint and confirms Plaintiff's lack of standing and failure to state a claim. Plaintiffs try to circumvent the injury requirement, by asserting they need not allege injury-in-fact when claiming violation of a state or federal statute. But the very case Plaintiffs rely on, *Warth v. Seldin*, contradicts this argument. Plaintiffs then assert that disclosure of allegedly "personal information" constitutes an injury, based on the lost ability to sell this so-called "currency" to advertisers themselves. This argument is contradicted by both the law and the facts alleged in the Complaint. As to the law, numerous courts have already rejected the argument that consumers suffer a compensable economic loss due to disclosure of their personal information. As to the facts, the Opposition now makes clear that the Complaint cannot be read to allege that Plaintiffs' identities were revealed to any third party. The Complaint alleges "disclosure" of only two things: (1) a Facebook User ID (simply a number assigned by Facebook) or Username (which a User may or may not choose to create, and which may or may not reflect a User's real name), and (2) the URL (or web address) of the web page the User was viewing when he clicked on an advertisement. The User ID and the URL are not "personal information" under any circumstances. As to Username, there is no allegation that any Plaintiff even created a Username, let alone a Username that reflected his real name. Moreover, the Complaint generalizes and never alleges that either of these two things was ever disclosed as to the named Plaintiffs themselves. Because there is no allegation of any actual injury that resulted from the alleged "disclosures" or that such disclosures actually occurred as to Plaintiffs, their Complaint should be dismissed for lack of standing.

Plaintiffs' Opposition also fails to address the weaknesses of each of their eight claims. For example, Plaintiffs now say that the alleged communications that form the basis of their claims under Titles I and II of the Electronic Communications Privacy Act ("ECPA") are Plaintiffs' supposed "communications" *with Facebook*. Even if, under Plaintiffs' novel theory, clicking on an ad could somehow be deemed the "contents of a communication" under the ECPA, Plaintiffs' assertion completely forecloses their ECPA claims, since as the recipient of the alleged

communication, Facebook would be permitted to disclose the communication under the express terms of the statute.  In addition, Plaintiffs foreclose the notion that they have suffered any "economic loss" sufficient to maintain a claim under California's Unfair Competition Law ("UCL"), suffered any actionable damages sufficient to plead a breach of contract, or made a "purchase" necessary to state a claim under the Consumers Legal Remedies Act ("CLRA"), since each instance they rely on the legally inaccurate and factually unsupported assertion that the alleged disclosure of a Facebook User ID, Username, or web page URL is a loss of "currency." Also, the Opposition barely addresses Facebook's showing that under California Penal Code § 502, Facebook did not act "without permission" as required by the statute.  Plaintiffs also fail to counter Facebook's showing that they have not pled fraud with particularity under California Civil Code §§ 1572 and 1573, asserting only, in effect, "did too."  Lastly, they fail to overcome the black-letter law that forbids claims for unjust enrichment where Plaintiffs' also assert an express contract.  Thus, Plaintiffs' Complaint should be dismissed for failure to state a claim.

## II.   ARGUMENT

### A.   The Information Allegedly Disclosed Does Not Reveal Plaintiffs' Identities.

As made clear by the Opposition, Plaintiffs' claims rests on the alleged disclosure of only two things: (1) a Facebook User ID or Username, and (2) the URL (or web address) of the web page the User was viewing when he clicked on an advertisement.  (Opp'n at 12 (citing Compl. ¶ 31.)   Although Plaintiffs try to confuse the issue by asserting that these items reveal a "User's identity" (Opp'n at 12) or that Facebook revealed undefined "personal information" (Opp'n at 8), or "PII" (Opp'n at 11), their allegations do not support this conclusion.

As the Complaint states, a "User ID" is simply a number (*e.g.*, 123456789) provided by Facebook when the User registers.  (Compl. ¶ 15.)  It is assigned by Facebook to the User; it is not personal information supplied by the User.  A "Username" is often an alias, nickname, or "handle" that a User may choose to (or choose not to) create—for example, a San Francisco lawyer named John Smith could choose to create the Username "SmithEsq" or "sanfranlawyer" or "Johnny."  Not all Facebook Users have a Username, and a Username need not, and often does

not, consist of the User's real name.[1]  (*Id.*)  More importantly, Plaintiffs do not allege that they even have Usernames, much less that they have Usernames that reflect their real names.  Finally, the URL allegedly disclosed is not personal information but rather is "the web page address the user was viewing prior to clicking the advertisement."  (*Id.* ¶ 28.)

Therefore, there is no allegation that Plaintiffs' real names or any sensitive personal information were disclosed.  Instead, to obtain personal information about a Plaintiff, a third party would have had to navigate to the Plaintiff's profile page—and, even then, the third party would only be able to see information designated by the Plaintiff as publicly accessible.  (Compl. ¶ 29.)  The Opposition, however, states that Plaintiffs' claims do not rest on allegations that "Facebook disclosed information voluntarily published on User *profiles* to advertisers" but that disclosure of the User ID or Username itself somehow revealed the User's identity.[2]  (Opp'n at 16.)  Plaintiffs' allegations do not support this conclusion.

### B. Plaintiffs Do Not Allege Concrete and Specific Harm Sufficient to Confer Article III Standing (All Counts).

#### 1. A statute's creation of a legal right does not relieve Plaintiffs of their obligation to allege specific and concrete harm showing injury-in-fact.

Plaintiffs argue that they have Article III standing merely by alleging a breach of a statute with a private right of action.  (Opp'n at 4.)  They rely on *Warth v. Seldin*, 422 U.S. 490 (1975), a Supreme Court decision that repeatedly affirms that even when alleging a breach of a statute conferring a private right of action, a plaintiff must *also* allege "specific, concrete facts demonstrating that the challenged practices harm him."  *Id.* at 508.  Although the *Warth* decision states that "[t]he actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing,'" the Court—in the next breath—reaffirms that "[o]f course, Art. III's requirement remains: the plaintiff still must allege a

---

[1] Again, Facebook requires that Users provide their real names when they register and create their profile. But a "Username" is different—it is completely voluntary, and does not need to be the User's real name.

[2] Plaintiffs are forced to make this strained (and incorrect) argument because, as both the Complaint and the Opposition admit, any additional information about Plaintiffs would be available via their profile pages only if the pages were set for *public* viewing, meaning that Plaintiffs had specifically permitted the information to be disclosed to the public.  (Compl. ¶¶ 12, 19; Opp'n at 16.)

distinct and palpable injury to himself . . . ." *Id*. at 500-01 (citing *U.S. v. Students Challenging Reg. Agency Procs. (SCRAP)*, 412 U.S. 669, 688-89 (1973), which re-affirms the injury-in-fact requirement when alleging statutory injury, holding that "plaintiff must allege that he has been or will in fact be perceptibly harmed by the challenged agency action, not that he can imagine circumstances in which he could be affected").

In *Warth*, plaintiffs alleged that zoning laws excluding low-income families violated their constitutional and statutory rights.  *Id*. at 490.  The Court held that plaintiffs lacked standing because they had not alleged any individualized harm resulting from the zoning laws, *i.e.*, that "petitioners themselves have been excluded, or that the respondents' assertedly illegal actions have violated their rights."  *Id*. at 502.  Instead, the Court found that plaintiffs had alleged only "the remote possibility, unsubstantiated by allegations of fact, that their situation might have been better had respondents acted otherwise," which is insufficient for Article III standing.  *Id*. at 507. Under the theory of standing put forward by Plaintiffs in the instant case, *Warth* would have come out differently—all the *Warth* plaintiffs would have needed to do to have standing in federal court is assert a breach of 42 U.S.C. § 1983.  *Warth* does not support such a standing theory.

Instead, the Supreme Court has specifically construed the language Plaintiffs quote from *Warth* as doing no more than recognizing that "Congress[] [may] elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law . . . ." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 578 (1992).  And the Court has repeatedly emphasized that even where Congress does legislate to recognize such *de facto* injuries, it cannot abrogate the Article III standing requirements, including injury-in-fact:

> Congress may, by legislation, expand standing to the full extent permitted by Art. III, thus permitting litigation by one "who otherwise would be barred by prudential standing rules." *Warth v. Seldin*, 422 U.S., at 501. In no event, however, may Congress abrogate the Art. III minima:  A plaintiff must always have suffered 'a distinct and palpable injury to himself,' *ibid*., that is likely to be redressed if the requested relief is granted.

*Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979); *see also Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have

standing."); *Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1151 (2009) ("[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute.").  In other words, even where a private right of action exists for violation of a statute, a plaintiff still must show that he or she has suffered injury-in-fact caused by such violation.

Plaintiffs do not and cannot make that showing here.  Plaintiffs' Complaint includes only non-specific allegations that a small subset of non-personal information, consisting of a User ID or Username along with the URL of the web page on which an advertisement appeared, was disclosed when Users clicked on the advertisement.  (Compl. ¶ 28.)  These allegations do not reflect any "distinct" injury. There is simply no allegation of any injury resulting from such a disclosure (for example, subsequent improper use of the information by a third party).  Indeed, Plaintiffs do not—presumably because they cannot—even allege that such information was disclosed *as to Plaintiffs themselves*, much less that it caused any injury to Plaintiffs.  Such hypothetical allegations are insufficient to establish an injury-in-fact.

Plaintiffs cite *Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974 (N.D. Cal. 2006), but conveniently overlook the specific and concrete allegations of harm made by plaintiffs in that case.  There, the complaint included allegations that plaintiffs' own information (including the contents of actual telephone calls) was intercepted and disclosed to the government, *id.* at 1000, and the government was using the information to detect and investigate terrorist activity, *id.* at 987.  The court held that this alleged a specific and concrete injury as to each customer based on the vast disclosure and AT&T's "collaboration" with the massive government "dragnet."  *Id.* at 1000.  Similarly, Plaintiffs cite *Doe 1 v. AOL, LLC*, 719 F. Supp. 2d 1102, 1109 (N.D. Cal. 2010), in support of the notion that disclosure of any type of personal information satisfies the injury-in-fact requirement.  But that case involved AOL's disclosure of approximately twenty million Internet search records in a downloadable package, which included sensitive information such as users' Social Security numbers, credit and debit card numbers, telephone numbers, and addresses, all in a manner that allowed easy correlation between the information and the identity of the user. *Id.* at 1105.  Furthermore, plaintiffs alleged that AOL did nothing to prevent third-party sites from continuing to sell access to the information (*i.e.*, profiting from the sale of plaintiffs' highly

confidential information) and that AOL continued to collect and disseminate the very same type of search data. *Id.* at 1109. Finally, plaintiffs in AOL *paid* for their service, *id.* at 1105 ("AOL . . . provided access to its services on a paid, subscription basis"), and they alleged that they suffered harm in part "as a result of . . . paying service and other fees and charges to AOL." (Pls' Mem. in Opp'n Mot. J. Pleadings at 11 (Dkt. No. 161 Apr. 6, 2010).) Thus, plaintiffs had alleged a massive and continuing disclosure of their extremely sensitive personal information from a service for which they paid money.[3] The contrast with Plaintiffs' Complaint here is stark.

Plaintiffs also cite *Hoang v. Reunion.com, Inc.*, No. C-08-3518 MMC, 2010 WL 1340535 (N.D. Cal. Mar. 31, 2010), for the proposition that standing may be found under a consumer protection statute "even though plaintiff could not allege actual injury." (Opp'n at 4.) But that case concerned whether plaintiffs could sue under a California statute restricting email spam. Relying on *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2009), the court found there was sufficient standing for a plaintiff who had allegedly received spam from defendant. While the court held that the standing requirements of the California statute were less strenuous than its federal counterpart, the court did *not* do away with the Article III standing requirement, but instead found that plaintiff—who had actually received the alleged spam and had therefore incurred the injury the statute was designed to address—had standing.[4]

---

[3] Plaintiffs also cite *Sisley v. Spring Communications Co., L.P.*, 284 Fed. Appx. 463, 466 (9th Cir. 2008), for the proposition that an allegation of "violation of . . . state statutory rights . . . can constitute a cognizable injury" for standing purposes. (Opp'n at 4.) But that case—an unpublished Ninth Circuit case that is not entitled to precedential value, *see* 9th Cir. R. 36-3(a)—contains little legal discussion on the point. And to the extent that it can be read to allow a claim to proceed without a showing of injury-in-fact, it is at odds with Supreme Court precedent.

[4] Two federal courts in California have recently affirmed the need to allege a present non-hypothetical injury-in-fact, even when asserting a statutory violation. *See Robins v. Spokeo, Inc.*, No. CV10-05306 ODW (AGRx), 2011 WL 597867, at *1 (C.D. Cal. Jan. 27, 2011) ("[E]ven when asserting a statutory violation, the plaintiff must allege 'the Article III minima of injury-in-fact' . . . . An 'injury in fact,' for the purposes of standing, must be actual or imminent and not conjectural or hypothetical."); *Lee v. Chase Manhattan Bank*, No. C07-04732 MJJ, 2008 WL 698482, at *5 (N.D. Cal. Mar. 14, 2008) ("[T]he mere allegation of a violation of a California statutory right, without more, does not confer Article III standing. A plaintiff invoking federal jurisdiction must also allege some actual or imminent injury resulting from the violation, which Plaintiffs here have failed to do. *See Lujan*, 504 U.S. at 560-61 ('the injury must affect the plaintiff in a personal and individual way'). Because Plaintiffs have not alleged facts demonstrating that they were personally harmed by any of defendants' alleged statutory violations, they have not pleaded any 'injury in fact.'").

2.       **Plaintiffs' "personal information" has no compensable value to them.**

Plaintiffs argue that they have suffered injury because their "personal information" constitutes "currency."  (Opp'n at 6.)  In support of this truly expansive view of economic exchange, Plaintiffs cite no legal authority whatsoever, but instead cite a handful of out-of-context comments by the FTC, Microsoft, and academics regarding the value of information in the Internet age.  (Opp'n at 6-7.)

Plaintiffs' argument is misplaced.  As discussed above (*supra* § II.A), Plaintiffs' allegations do not suggest that any of the information allegedly disclosed revealed their identities or "personal information."  In fact, Plaintiffs' own authority would not characterize the alleged disclosures as "personal information."  (*See* Opp'n at 10 (noting items such as a consumer's address, unpublished telephone number, or Social Security number are "personal information").)  Thus, even if Plaintiffs' novel theory were correct, the allegations do not suggest that any of Plaintiffs' personal information has even been disclosed.

Furthermore, just because information about users or subjects may have value to the collector does not mean (a) that the information is literally "currency" or (b) that the collector has taken money or property from the subject.  For example, while a newspaper or website may create value by collecting and organizing information about, *e.g.*, baseball statistics or stock prices, the baseball players and public companies have not thereby lost anything of value.

Plaintiffs' argument that their information has value to them simply because it may have value, in the aggregate, to Facebook or advertisers has already been considered and rejected by a number of courts.  For instance, in *In re Doubleclick Inc. Privacy Litigation*, 154 F. Supp. 2d 497, 525 (S.D.N.Y. 2001), web consumers argued that because "companies pay DoubleClick for plaintiffs' attention (to advertisements) and demographic information," the value of these services rightfully belonged to plaintiffs.  The court rejected plaintiffs' argument.  It noted that "although demographic information is valued highly (as DoubleClick undoubtedly believed when it paid over one billion dollars for Abacus), the value of its collection has never been considered a economic loss to the subject."  *Id.*; *see also Thompson v. Home Depot, Inc.*, No. 07cv1058 IEG (WMc), 2007 WL 2746603, at *3 (S.D. Cal. Sept. 18, 2007) (holding that use of personal

information such as a name and telephone number by defendant for marketing purposes did not confer a property interest in the information to plaintiff, since such information is not "property" under Cal. Bus. & Prof. Code § 17200); *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005) ("It strains credulity to believe that [a data mining company] would have gone to each individual JetBlue passenger and compensated him or her for access to his or her personal information.  There is likewise no support for the proposition that an individual passenger's personal information has or had any compensable value in the economy at large."); *Dwyer v. Am. Express Co.*, 273 Ill. App. 3d 742, 749 (Ill. App. Ct. 1995) (cardholder name has little or no intrinsic value apart from its inclusion on a categorized list; instead "defendants create value by categorizing and aggregating" the names).  Plaintiffs' attempt to argue that they have suffered economic harm is thus unavailing.

### C.   Plaintiffs' ECPA Claims Are Not Saved By Plaintiffs' New Arguments (Counts I and II).

Faced with the deficiencies of their Complaint, Plaintiffs shift tactics in their Opposition, arguing that "Facebook's central premise—that the communications at issue are between Plaintiffs and advertisers—is incorrect."  (Opp'n at 11.)  Plaintiffs instead argue that their claims under the ECPA are based on "disclosure of the contents of *communications between Facebook and Plaintiffs*" because "when a Facebook User clicks on an ad, the User is '*asking Facebook* to send an electronic communication to the advertiser.'"  (Opp'n at 12 (italics in original); *accord* Opp'n at 15-16; *see also* Opp'n at 16 (Plaintiffs did not intend the advertisers "to be privy to Plaintiffs' communications with Facebook").)  Plaintiffs argue that because they are complaining of communications *to Facebook*, not advertisers, Facebook's arguments are inapposite.

As an initial matter, Facebook does not concede that the purported "communications" at issue, be it to Facebook or to the advertisers, (a) were disclosed by Facebook (rather than by the User's web browser as part of its standard functions), (b) that the purported "communications" are anything other than customer records, or (c) that the records revealed Plaintiffs' identities as discussed above (*supra* § II.A) (*see also* Motion to Dismiss ("Mot.") at 7).  Plaintiffs have cited nothing that would suggest that a User ID, Username, or record of which web page the User was

viewing when he clicked on an ad would be the "contents of a communication" instead of a "customer record" under the statute.  (Mot. at 10-12.)

Moreover, Plaintiffs' clarification that the alleged "communications" at issue were between them and Facebook (Opp'n at 12, 16) is fatal to Plaintiffs' ECPA claims.  Under the ECPA (both the Wiretap Act and the Stored Communications Act), an "addressee or intended recipient" of the communication is expressly permitted to disclose communications to other parties.  *See* 18 U.S.C. §§ 2511(3)(b)(ii), 2702(b)(3) (allowing disclosure "with the lawful consent of the originator or any addressee or intended recipient of such communication"); *In re Am. Airlines, Inc. Privacy Litig.*, 370 F. Supp. 2d 552, 560-61 (N.D. Tex. 2005) (holding that American Airlines was not liable under the ECPA for disclosure of personal information provided to them by plaintiffs under the addressee or intended recipient exception, even if the disclosure was contrary to American's privacy policy).  In short, because Facebook is (according to Plaintiffs' own clarified allegations) the addressee or intended recipient of the alleged communication, Facebook could not be liable for allegedly disclosing them under the ECPA.

### D.    Plaintiffs' UCL Claim Must Be Dismissed (Count III).

#### 1.    Plaintiffs lack UCL standing.

California law is clear: to have standing under the UCL, a plaintiff must have suffered *both* injury-in-fact *and* a loss of money or property, *i.e.*, *economic injury*.  Standing under the UCL is therefore narrower than the Article III standing requirements.  *Kwikset Co. v. Super. Ct. of Orange County*, --- Cal. Rptr. 3d ---, No. S171845, 2011 WL 240278, at *5 (Cal. Jan. 27, 2011) ("To satisfy the narrower standing requirements imposed by Proposition 64, a party must now . . . establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury* . . .") (italics in original).  Not only have Plaintiffs failed to allege injury-in-fact, as discussed above, but they *have not and cannot* allege the economic injury—loss of money or property—required for standing under the UCL.

Plaintiffs do not allege that they paid or otherwise tendered money to Facebook, and they cannot because Facebook is a *free* service.  Instead, Plaintiffs assert—without legal authority— that their personal information constitutes "currency" that they exchanged for the use of Facebook

services, and that they lost money or property by being deprived of the right to bargain with that information.  As discussed above, the courts addressing this argument have held that disclosure of personal information is not a loss of money or property.  (*See supra* § II.B.2.)  *See also*, *e.g.*, *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008) (allegations that defendant improperly disclosed plaintiff's Social Security number did not "somehow constitute[] a loss of property" under the UCL), *aff'd*, No. 09-15971, 2010 WL 2170993 (9th Cir. May 28, 2010) (unpublished); *Thompson*, 2007 WL 2746603, at *3 (rejecting plaintiff's argument that personal information, including his name, telephone number, and signature, constituted property under the UCL); *see also Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1057-58 (E.D. Mo. 2009) (release of plaintiff's Social Security number, date of birth, and prescription medicine information was not a loss of property under Missouri's unfair practices law); *JetBlue*, 379 F. Supp. 2d at 327 (stating "[t]here is likewise no support for the proposition that an individual's [] personal information has or had any compensable value in the economy at large").  Furthermore, as discussed above, the alleged disclosure was not of *personal* information but of a Facebook-generated User ID or an optional Username of a User's choosing, and the URL of the web page the User was viewing when he clicked on an advertisement, which could be any web page available through Facebook.

As discussed above (*supra* § II.B.1), Plaintiffs' reliance on *AOL* as support for the idea that they suffered injury-in-fact is unavailing.  Further, unlike in *AOL*, Plaintiffs have not suffered lost money or property for purposes of UCL standing as they paid no fees to Facebook.

### 2. Plaintiffs have failed to allege "unlawful" conduct under the UCL.

As discussed in Facebook's moving brief and here, Plaintiffs have failed to state a claim under any cause of action.  Thus, even if Plaintiffs could allege standing under the UCL, Plaintiffs' UCL "unlawful" prong claim must also be dismissed for failure to state a claim.  *See Whiteside v. Tenet Healthcare Corp.*, 101 Cal. App. 4th 693, 706 (2001) (UCL "unlawful" claim fails where complaint fails to state a claim for violation of underlying law).

### 3. Plaintiffs have failed to allege "fraudulent" conduct under the UCL.

Federal Rule of Civil Procedure 9(b) requires that allegations of fraud, including claims under the UCL's "fraudulent" prong, be pled with particularity.  *See Fortaleza v. PNC Fin. Servs.*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10.

FACEBOOK'S REPLY I/S/O MOTION TO DISMISS
CASE NO. 10-CV-02389-JW

*Group, Inc.*, 642 F. Supp. 2d 1012, 1020 (N.D. Cal. 2009) (claims for fraudulent business practices must be pled with particularity); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.") (citations omitted).  As argued in Facebook's moving brief, Plaintiffs have not sufficiently alleged fraud by Facebook or their own reliance.  (Mot. at 16-17.)  In their Opposition, Plaintiffs try to avoid this requirement by contending that "[r]easonable consumers such as Plaintiffs *would have* had serious reservations about sharing personal information with Facebook." (Opp'n at 19.)  But Plaintiffs never allege that *they* relied on any of the alleged "misrepresentations."  Nor can Plaintiffs rely on the presumption of reliance that will be accorded to the class they seek to represent, unless they themselves read and relied upon the alleged misrepresentations at issue.  Plaintiffs' own case, *Mirkin v. Wasserman*, 5 Cal. 4th 1082 (1993), states clearly that "[w]hile . . . actual reliance can be proved on a class-wide basis when each class member has read or heard the same misrepresentations, nothing . . . so much as hints that a plaintiff may plead a cause of action for deceit without alleging actual reliance."  *Id.* at 1095.  Thus, Plaintiffs have not pled the "who, what, when, where, and how" required to allege fraud, *see Vess*, 317 F.3d at 1106, and their claim must fail.

**4.      Plaintiffs have failed to allege "unfair" conduct under the UCL.**

Plaintiffs' claim under the "unfair" prong also fails.  *First*, Plaintiffs have failed to plead their claim with the requisite particularity to satisfy Rule 9(b).  Plaintiffs' "unfair" claim alleges that Facebook "gain[ed] control over and divulg[ed] to third parties its users' PII . . . under false pretenses." (Compl. ¶ 82.)  Since fraud or misrepresentation is an essential element of their claim under this prong, they must plead with particularity.  *See Vess*, 317 F.3d at 1103-04.  And Plaintiffs do not provide any argument in support of the sufficiency of their pleading, other than a blanket statement that the relevant allegations "are sufficient." (Opp'n at 19 n.13.)

*Second*, Plaintiffs do not provide support for their claim under any of the *Camacho* requirements: (1) substantial consumer injury, (2) that is not outweighed by countervailing benefits to consumers, and (3) that consumers could not have reasonably have avoided.  *Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006).  Plaintiffs would have the Court

Cooley LLP
Attorneys At Law
San Francisco

11.

FACEBOOK'S REPLY I/S/O MOTION TO DISMISS
CASE NO. 10-CV-02389-JW

take at face value that they have suffered "concrete injury" (Opp'n at 19), when, as discussed above, Plaintiffs have failed to show *any injury whatsoever*.  Without injury, there is nothing to weigh against the "countervailing benefits to consumers"—and there can be no doubt that the benefits are substantial; as "Facebook is the world's largest social networking website" (Compl. ¶ 11), and Users voluntarily share information on Facebook "in order to connect with other Facebook users." (Compl. ¶ 16.)  Plaintiffs have therefore alleged neither that any harm to consumers outweighs Facebook's benefits, nor that any harm to them was unavoidable.

### E.       Plaintiffs Fail to State a Claim under California Penal Code § 502 (Count IV).

Plaintiffs argue, without any applicable legal authority, that because "Plaintiffs' voluntary interactions with Facebook were undertaken under the reasonable belief that Facebook would abide by its own Terms of Service and Privacy Policy" (Opp'n at 20) they can state a claim under California Penal Code § 502.  Plaintiffs' argument seeks to evade completely the elements of § 502.  For instance, Plaintiffs ignore altogether the Complaint's failure to allege that their information was "accessed," defined as "to gain entry to, instruct, or communicate with the logical, arithmetical, or memory function resources of a computer," *see* § 502(a)(1), as required to state a claim under § 502(c)(1), (c)(2), (c)(6), and (c)(7).  Nor do they address Facebook's argument that no "computer services," consisting of "computer time, data processing or storage functions," *see* § 502(a)(4), are alleged to have been used as required under § 502(c)(3).  Lastly, the Opposition does not even attempt to explain which allegations in the Complaint suggest that Facebook introduced a "computer contaminant" that "modif[ied], damage[d], destroy[ed], record[ed], or transmit[ed] information," *see* § 502(a)(10), as required under § 502(c)(8).

In fact, adopting Plaintiffs' argument would essentially allow any party who voluntarily discloses personal information to a website to argue that any breach of any term of the website's privacy policy or terms of use results in the website "hacking" their computer or data—thus violating § 502.  As discussed in Facebook's moving brief (Mot. at 18-21), this is not the law.  Instead, a party does not act "without permission" as required for a claim under § 502 if the system is used "for the purpose that it was designed to serve, *even if in a manner that is otherwise improper* . . . ." *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-05780 JW, 2010 WL 3291750,

Cooley LLP
Attorneys At Law
San Francisco

12.

FACEBOOK'S REPLY I/S/O MOTION TO DISMISS
CASE NO. 10-CV-02389-JW

at *7 (N.D. Cal. July 20, 2010) (italics added).[5]   Thus, even if Plaintiffs were correct that Facebook acted contrary to the Privacy Policy or Terms of Use (it did not), those allegations would not establish that Facebook acted "without permission" for purposes of § 502.   Because Plaintiffs fail to allege any facts to support their claim under § 502, the claim must be dismissed.

### F.   Plaintiffs' CLRA Claim Must Be Dismissed Because Plaintiffs Are Not Consumers of Goods or Services Under the Statute (Count V).

The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."   Cal. Civ. Code § 1770(a).   "'Consumer' means an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes."   *Id.* § 1761(d).   "'Goods' means tangible chattels bought or leased for use primarily for personal, family, or household purposes . . . ."   *Id.* § 1761(a).   "'Services' means work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods."   *Id.* § 1761(b).

Because Plaintiffs acknowledge, as they must, that Facebook is free, they make the strained argument that they qualify as "consumers" because they "use their personal information to purchase Facebook products and services."   (Opp'n at 21-22.)   Plaintiffs cite no case law under the CLRA that would support such an expansive reading of the word "purchase" and Facebook has not found any.   In fact, as discussed above (*see supra* § II.B.2), courts across the country have rejected the notion that information about users is property or has discernable value to the users simply because the information may have value, in the aggregate, to companies who might collect such information.   *See Doubleclick*, 154 F. Supp. 2d at 525; *Thompson*, 2007 WL 2746603, at *3; *JetBlue*, 379 F. Supp. 2d at 327; *Dwyer*, 273 Ill. App. 3d at 749.   A finding to the contrary would

---

[5] Plaintiffs assert that § 502 is not limited to instances of hacking, citing *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039 (N.D. Cal. 2010). (*See* Opp'n 20 n.14.)   *Craigslist* dealt with a classic example of hacking, where defendant developed software specifically designed to circumvent plaintiff's website security measures and facilitate the posting of impermissible ads.  *See id.* at 1049 (describing software designed to "post ads for customers, programs to gather craigslist user email addresses from the craigslist website, and systems to circumvent Plaintiff's security measures").   In any event, Facebook's argument (Mot. at 18-21), which Plaintiffs make little attempt to counter in a meaningful way, is based on the statutory language and the case law, not on whether the alleged conduct is categorized as "hacking" or not.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13.

FACEBOOK'S REPLY I/S/O MOTION TO DISMISS
CASE NO. 10-CV-02389-JW

1    stretch the notion of "consumer" beyond recognition.  Thus, even if Plaintiffs were correct that

2    they provided personal information in order to register for Facebook's web site, this would not

3    constitute a "purchase" and Plaintiffs are not "consumers" under the CLRA.  Furthermore,

4    Facebook is clearly not a "tangible chattel" that would qualify it as a "good" under the statute, nor

5    is it a "service" as that term is narrowly defined by the statute.  "Service," for CLRA purposes, is

6    narrower than the dictionary definition.  *See Fairbanks v. Super. Ct.*, 46 Cal. 4th 56, 61 (2009)

7    (construing definition of "service" to apply only to "work or labor" or the "sale or repair of any

8    tangible chattel").  For instance, California courts have held that provision of intangible goods,

9    such as life insurance, credit cards, or computer software, is not a "service" under the statute.  *See*

10   *id* at 61; *Berry v. Am. Express Publ'g, Inc.*, 147 Cal. App. 4th 224, 227 (2007); *Ferrington v.*

11   *McAfee, Inc.*, No. 10-CV-01455-LHK, 2010 WL 3910169, *19 (N.D. Cal. 2010 Oct. 5, 2010).

12   Because Facebook likewise provides an intangible good, *i.e.*, a web site for social networking, it

13   does not fall under the CLRA's definition of service.  As Plaintiffs have failed to allege that they

14   are consumers, or that Facebook is a "good or service" under the CLRA, they fail to state a claim.

15       **G.       Plaintiffs Fail to State a Claim for Breach of Contract (Count VI).**

16       Plaintiffs' breach of contract claim fails because they have not alleged any *appreciable*

17   *and actual* damages.  *See Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 917 (N.D. Cal. 2009) ("breach

18   of contract claim requires a showing of appreciable and actual damage").  Facebook's services are

19   *free*, not provided in exchange for any personal information from Facebook's users.  And the case

20   law is clear that disclosure of personal information cannot constitute actionable damages for a

21   breach of contract claim.  *See, e.g.*, *id.*; *JetBlue*, 379 F. Supp. 2d at 326-27; *Dyer v. Nw. Airlines*

22   *Corps.*, 334 F. Supp. 2d 1196, 1200 (D.N.D. 2004).

23       Plaintiffs argue that these cases are distinguishable because "[Plaintiffs'] personal

24   information was *the sole consideration provided in exchange for Facebook's services*."  (Opp'n

25   at 22.)  But Plaintiffs were not required to disclose *any* of the allegedly improperly disclosed

26   information at the time they signed up for Facebook, and such information cannot therefore be

27   any part of Plaintiffs' consideration, let alone the sole consideration.  User IDs are generated by

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14.

FACEBOOK'S REPLY I/S/O MOTION TO DISMISS
CASE NO. 10-CV-02389-JW

Facebook, not Users; Usernames are not required at all; and referrer URLs are generated at the time Users click on ads, not when Users sign up for Facebook.  (*See* Compl. ¶¶ 15, 28.)

**H.      Plaintiffs Fail to State a Claim Under Cal. Civil Code §§ 1572-73 (Count VII).**

Facebook set forth an extensive argument in its moving brief, explaining the deficiencies of Plaintiffs' Complaint and its failure to assert a claim under Civil Code §§ 1572 and 1573. (Mot. 23-24.)  Plaintiffs muster just five short lines in response, none of which addresses any of these deficiencies.  (Opp'n at 24.)  As noted in Facebook's moving brief, because Plaintiffs fail to allege particular facts describing the alleged fraud, *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009), they fail to state a claim.

**I.      Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law (Count VIII).**

Plaintiffs cite cases for the proposition that California recognizes actions for unjust enrichment, but they undermine Plaintiffs' position by acknowledging that (1) a plaintiff cannot simultaneously allege unjust enrichment and a valid contract between the parties, and (2) unjust enrichment is not an independent cause of action.  *See, e.g.*, *Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004) (dismissing unjust enrichment claim with prejudice because the law does not allow "a Plaintiff invoking state law to an unjust enrichment claim while also alleging an express contract"); *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004) ("[u]njust enrichment is not a cause of action"); *see also* Mot. at 24-25 (citing cases). Accordingly, Plaintiffs' unjust enrichment claim must be dismissed.

**III.   CONCLUSION**

For the reasons set forth above and in Facebook's Motion to Dismiss, Plaintiffs lack standing to bring this action under Article III of the United States Constitution and Plaintiffs fail to state a claim as a matter of law.  Accordingly, the Complaint should be dismissed.

Dated: March 14, 2011                          COOLEY LLP

                                               /s/ Matthew D. Brown
                                               Matthew D. Brown (196972)

                                               Attorneys for Defendant FACEBOOK, INC.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15.

FACEBOOK'S REPLY I/S/O MOTION TO DISMISS
CASE NO. 10-CV-02389-JW