United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re Facebook Privacy Litigation | NO. C 10-02389 JW<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE** |

Presently before the Court is Defendant's Motion to Dismiss.[1] The Court conducted a hearing on October 17, 2011. Based on the papers submitted to date and oral argument, the Court GRANTS Defendant's Motion to Dismiss.

**A.  Background**

A detailed summary of the factual background of this case is provided in the Court's May 12, 2011 Order.[2] The Court reviews the procedural history relevant to the present Motion.

On May 12, 2011, the Court granted in part and denied in part Defendant's previous motion to dismiss. (See May 12 Order.) On June 13, 2011, Plaintiffs filed an Amended Complaint pursuant to the Court's May 12 Order.[3]

---

[1] (Defendant's Motion to Dismiss First Amended Consolidated Action Complaint, hereafter, "Motion," Docket Item No. 96.)

[2] (Order Granting in part and Denying in part Defendant's Motion to Dismiss, hereafter, "May 12 Order," Docket Item No. 91.)

[3] (First Amended Consolidated Class Action Complaint, hereafter, "FAC," Docket Item No. 92.)

**B.     Standards**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted against that defendant. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-534 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the pleading. Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).

However, mere conclusions couched in factual allegations are not sufficient to state a cause of action. Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988). The complaint must plead "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

**C.     Discussion**

Defendant moves to dismiss on the grounds that: (1) Plaintiffs fail to state a claim under either the Wiretap Act or Stored Communications Act ("SCA"), inasmuch as the "addressee or intended recipient" of all communications alleged in the First Amended Complaint was either Defendant or a third-party advertiser; (2) Plaintiffs fail to state a claim under Cal. Penal Code § 502(c)(8), as they do not adequately allege that Defendant introduced a "computer contaminant" into their computers to "usurp" the normal function of those computers; (3) Plaintiffs fail to state a claim for breach of contract, because they do not allege that they have suffered any actual damages; and (4) Plaintiffs fail to state a claim under Cal. Civ. Code §§ 1572 and 1573, because they fail to plead this claim adequately under the heightened pleading standard of Rule 9(b). (Motion at 7-25.)

Plaintiffs respond that: (1) Defendant is liable under the SCA, because it was acting as a "remote computing service provider," and thus cannot rely on the "intended recipient" exception to liability; (2) Defendant introduced computer instructions that "usurped" the normal operation of Plaintiffs' computers, in violation of Cal. Penal Code § 502(c)(8); (3) Plaintiffs state a claim for breach of contract, because they have adequately alleged actual damages; and (4) Plaintiffs state a claim under Cal. Civ. Code §§ 1572 and 1573, because they allege that they relied on Defendant's alleged fraudulent misrepresentations.[4]

The Court considers each ground in turn.

### 1. Stored Communications Act

At issue is whether Plaintiffs state a claim under the SCA.[5]

Under the SCA, an entity providing an electronic communication service to the public "shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service."[6] 18 U.S.C. § 2702(a)(1). However, a provider of an electronic communication service may divulge the contents of a communication to an addressee or intended recipient of such a communication. Id. § 2702(b)(1). A provider of an electronic communication

---

[4] (See Plaintiffs' Opposition to Facebook's Motion to Dismiss First Amended Consolidated Class Action Complaint at 2-18, hereafter, "Opp'n," Docket Item No. 101.)

[5] Although the Amended Complaint includes causes of action under both the Wiretap Act and SCA, Plaintiffs' Opposition does not address either the Wiretap Act cause of action or Defendant's Motion to Dismiss as to that cause of action. When this issue was raised at the hearing, Plaintiffs maintained that they have reserved their rights to assert a claim under the Wiretap Act. However, Plaintiffs' vague statement at oral argument is insufficient to save this claim in light of their blatant failure to respond to Defendant's Motion. Accordingly, the Court concludes that Plaintiffs have abandoned their Wiretap Act cause of action, which is therefore dismissed with prejudice. See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig., 586 F. Supp. 2d 1109, 1131 (N.D. Cal. 2008) (concluding, where plaintiffs' opposition did not address a claim or defendants' arguments regarding that claim in a motion to dismiss, that the plaintiffs "have abandoned the claim," and granting the motion to dismiss the claim "without leave to amend").

[6] As the Ninth Circuit has explained, an "electronic communication service" ("ECS") is statutorily defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." Quon v. Arch Wireless Operating Co., Inc., 529 F.3d 892, 900 (9th Cir. 2008) (rev'd on other grounds by City of Ontario v. Quon, 130 S. Ct. 2619 (2010)) (citing § 2510(15)). By contrast, a "remote computing service" ("RCS") is statutorily defined as "the provision to the public of computer storage or processing services by means of an electronic communications system." Id. (citing § 2711(2)).

3

1 service may also divulge the contents of a communication with "the lawful consent" of an addressee
2 or intended recipient of such a communication. Id. § 2702(b)(3).

3     Here, Plaintiffs allege as follows:

4     [Defendant] is an electronic communications provider within the meaning of the [SCA].
5     When a [user of Defendant's website] clicks on an advertisement posted on [Defendant's] website, the user sends a message to [Defendant] requesting that [Defendant]
6 connect the user to the specific advertisement. . . . In other words, [Defendant] actually acts as the intermediary between the user and the advertiser.
7     [Defendant] is also a "remote computing service" provider pursuant to [the SCA].

8 (FAC ¶¶ 69, 74, 81.)

9     Upon review, the Court finds that Plaintiffs fail to state a claim under the SCA. In its May
10 12 Order, the Court observed that Plaintiffs were either alleging "that the communications at issue
11 were sent to Defendant or to advertisers." (May 12 Order at 10.) The Court explained that, under
12 either interpretation, Plaintiffs had failed to state a claim under the SCA. (Id.) As the Court
13 explained, if the communications were sent to Defendant, then Defendant was their "addressee or
14 intended recipient," and thus was permitted to divulge the communications to advertisers so long as
15 it had its own "lawful consent" to do so. (Id. (citing 18 U.S.C. § 2702(b)(3)).) In the alternative, if
16 the communications were sent to advertisers, then the advertisers were the addressees or intended
17 recipients of those communications, and Defendant was permitted to divulge the communications to
18 them. (Id. (citing 18 U.S.C. § 2702(b)(1)).) Thus, the Court granted Defendant's motion to dismiss
19 Plaintiffs' cause of action under the SCA without prejudice, "with leave to amend to allege specific
20 facts showing that the information allegedly disclosed by Defendant was not part of a
21 communication from Plaintiffs to an addressee or intended recipient of that communication." (Id.)

22     Here, in their Amended Complaint, Plaintiffs specifically allege that the "message[s]" at
23 issue in this case were sent to advertisers, with Defendant acting as the "intermediary" for those
24 messages. (FAC ¶ 74.) Thus, Plaintiffs allege that their communications were sent by Defendant to
25 the intended recipients of the communications, namely, advertisers. Further, Plaintiffs contend that
26 Defendant "was acting as an RCS provider at the time that it non-consensually divulged the contents
27 of Plaintiffs' communications." (Opp'n at 2.) However, Plaintiffs also contend that because "all

28     4

*United States District Court*
For the Northern District of California

1 user communications carried or maintained on an RCS [provider]'s computers are sent to it directly
2 by the user, [the RCS provider] is an 'intended recipient' of all the [user's] communications," which
3 means that the "intended recipient" exception to liability under the SCA cannot be applicable to an
4 RCS provider. (Id. at 6-7.)

5 In order to address Plaintiffs' claims, the Court finds that it is necessary to consider the
6 difference between an ECS provider and an RCS provider under the SCA. The SCA defines an ECS
7 as "any service which provides to users thereof the ability to send or receive wire or electronic
8 communications." 18 U.S.C. § 2510(15). By contrast, the SCA defines an RCS as "the provision to
9 the public of computer storage or processing services by means of an electronic communications
10 system." Id. § 2711(2). As the Ninth Circuit has explained, when the SCA was passed in 1986,
11 Congress intended the term "RCS" to refer to an "off-site third party" which performed the tasks of
12 "processing or storage of data" for subscribers to the RCS. Quon, 529 F.3d at 901-02 (citations
13 omitted). In speaking of "processing" data, Congress referred to a business practice of
14 "transmit[ting] their records to remote computers to obtain sophisticated data processing services" of
15 the type that is currently performed by "advanced computer processing programs such as Microsoft
16 Excel." Id. at 902. In speaking of the "storage of data," Congress referred to a business practice of
17 maintaining files in "offsite data banks," which acted as a "virtual filing cabinet." Id.

18 Upon review, the Court finds that Plaintiffs' argument relies on two mutually inconsistent
19 propositions. On the one hand, Plaintiffs allege that the communications at issue in this case were
20 requests to be connected to specific advertisements; that the requests were addressed to advertisers;
21 and that Defendant merely acted as the "intermediary" for those communications. (FAC ¶¶ 69, 74,
22 81.) On the other hand, Plaintiffs contend that Defendant acted as an RCS provider for purposes of
23 Plaintiffs' claim under the SCA. (Opp'n at 2.) On the first view, if the communications were
24 addressed to advertisers, then they were not sent to Defendant in order for Defendant to provide the
25 "processing or storage" of Plaintiffs' "data," which means that Defendant was not acting as an RCS
26 provider with respect to the communications. Quon, 529 F.3d at 901-02. By contrast, on the second
27 view, if Defendant was acting as an RCS provider for purposes of Plaintiffs' claim, then it must be

28

5

1 the case that Plaintiffs' communications consisted of "data" which Plaintiffs sent to Defendant for

2 "processing or storage." However, Plaintiffs allege that the communications at issue were requests

3 to be connected to advertisements, not data to be processed or stored.[7]

4     Accordingly, the Court finds that Plaintiffs fail to state a claim under the SCA.

5     **2.    Cal. Penal Code § 502(c)(8)**

6     At issue is whether Plaintiffs state a claim under Cal. Penal Code § 502(c)(8).

7     Cal. Penal Code § 502, the Comprehensive Computer Data Access and Fraud Act, was

8 enacted to expand the degree of protection to individuals, businesses and government agencies from

9 "tampering, interference, damage, and unauthorized access to lawfully created computer data and

10 computer systems." Cal. Penal Code § 502(a). Section 502 creates liability for any person who

11 "knowingly introduces any computer contaminant into any computer, computer system, or computer

12 network." Id. § 502(c)(8).

13     Here, Plaintiffs allege as follows:

14 > [Defendant] knowingly and without permission introduced a computer contaminant
> . . . by introducing computer instructions designed to record or transmit to advertisers
> Plaintiffs' and the Class's personally-identifiable information on [Defendant]'s computer
> networks without the intent or permission of Plaintiffs or the Class in violation of
> § 502(c)(8). These instructions usurped the normal operations of the relevant computers,
> which by normal operation would not transmit the [personally identifiable information] of
> Plaintiff [and] the Class members.

18 (FAC ¶ 104.)

19     Upon review, the Court finds that Plaintiffs do not allege facts adequate to state a claim

20 under Cal. Penal Code § 502(c)(8). In its May 12 Order, the Court found that Plaintiffs, in their

21 earlier Complaint, had failed to "allege any facts suggesting that Defendant introduced computer

22 instructions designed to 'usurp the normal operation' of a computer, computer system or computer

---

[7] In light of the Court's disposition of Plaintiffs' SCA claim, the Court does not reach the merits of Plaintiffs' contention that "only ECS providers, and not RCS providers like [Defendant], may avail themselves of the SCA's 'intended recipient' exception." (Opp'n at 4.) Further, the Court notes that Defendant contends that it was acting only as an ECS provider, and not as an RCS provider, in regard to the communications at issue in this case. (See Facebook, Inc.'s Reply in Support of Motion to Dismiss First Amended Consolidated Class Action Complaint at 3-5, Docket Item No. 102.) However, in light of the Court's disposition of Plaintiffs' SCA claim, the Court does not reach the question of whether Defendant was acting as an RCS provider.

6

network." (May 12 Order at 13 n.11.) Here, likewise, Plaintiffs fail to allege any facts in support of their claim. Moreover, elsewhere in their Amended Complaint Plaintiffs allege that Defendant "shares its users' sensitive [personally identifiable] information with third party advertisers without its users' knowledge or consent" by sending to advertisers a "Referrer Header" which "reveals the specific web page address the user was viewing prior to clicking the advertisement." (FAC ¶¶ 34, 35.) Plaintiffs further allege that this "Referrer Header" is a "standard web browser function provided by web browsers since . . . 1996." (Id. ¶ 41.) Thus, on Plaintiffs' own allegations, Defendant's alleged transmission of personally identifiable information is caused by a "standard web browser function," rather than by a "contaminant" introduced to Plaintiffs' computers by Defendant to "usurp" the "normal operations" of those computers.[8]

Accordingly, the Court finds that Plaintiffs fail to state a claim under Cal. Penal Code § 502(c)(8).

### 3. Breach of Contract

At issue is whether Plaintiffs state a claim for breach of contract.

Under California law, to state a cause of action for breach of contract a plaintiff must plead: "the contract, plaintiffs' performance (or excuse for nonperformance), defendant's breach, and damage to plaintiff therefrom." Gautier v. General Tel. Co., 234 Cal. App. 2d 302, 305 (Cal. Ct. App. 1965). California law requires a showing of "appreciable and actual damage" to assert a breach of contract claim. Aguilera v. Pirelli Armstrong Tire Corp., 223 F.3d 1010, 1015 (9th Cir. 2000). Nominal damages and speculative harm do not suffice to show legally cognizable damage under California contract law. Ruiz v. Gap, Inc., 622 F. Supp. 2d 908, 917 (N.D. Cal. 2009).

Here, Plaintiffs allege that they suffered "actual and appreciable damages [in] the form of the value of their [personally identifiable information] that [Defendant] wrongfully shared with

---

[8] The Court is not aware of any cases in which a court has allowed a plaintiff to pursue a claim under Cal. Penal Code § 502(c)(8) under allegations comparable to those in this case. As another court in the Northern District has explained, § 502(c)(8) is aimed at "'viruses or worms[]' and other malware that usurps the normal operation of the computer or computer system." See In re iPhone Application Litig., No. 11-MD-02250-LHK, 2011 WL 4403963, at *13 (N.D. Cal. Sept. 20, 2011).

7

1  advertisers."[9] (FAC ¶ 122.) However, the Court has already rejected Plaintiffs' theory that their
2  personally identifiable information has value.[10] Thus, the Court finds that Plaintiffs fail to show that
3  they have suffered "appreciable and actual damage," which means that their breach of contract claim
4  fails. Aguilera, 223 F.3d at 1015.

5  Plaintiffs' reliance on Claridge v. RockYou, Inc.[11] is misplaced. In Claridge, the court
6  considered a similar allegation that a "defendant's role in allegedly contributing to the breach of
7  [the] plaintiff's [personally identifiable information] caused plaintiff to lose the 'value' of their [sic]
8  [personally identifiable information], in the form of their breached personal data." Id. at *4. In
9  assessing this allegation, the court noted that the plaintiff was "advancing a novel theory of
10 damages," and observed that there was "no clearly established law regarding the sufficiency of
11 allegations of injury in the context of the disclosure of online personal information." Id.
12 Recognizing the "paucity of controlling authority" in this area, and that the theory of damages by
13 way of "unauthorized disclosure of personal information via the Internet" was a "relatively new"
14 one, the court "decline[d] to hold at this juncture" that the plaintiff had "failed to allege an injury in
15 fact sufficient to support Article III standing." Id. at *5. Thus, far from having "expressly embraced
16 the damages theory [presented by Plaintiffs],"[12] the court in Claridge explicitly asserted that there
17 was "no clearly established law" to support this kind of "novel theory of damages." Rather, the
18 court merely declined to dismiss the entirety of the plaintiff's case for lack of Article III standing,
19 and found the "plaintiff's allegations of harm sufficient at this stage to allege a generalized injury in

---

[9] Plaintiffs allege that Defendant requires users of its website to assent to its "Terms and Conditions and Privacy Policy" (the "Agreement"), and that the Agreement constitutes "a valid and enforceable contract between Plaintiffs and the Class on the one hand, and [Defendant] on the other." (FAC ¶¶ 115-16.) Plaintiffs further allege that Defendant breached the Agreement by disclosing "Plaintiffs' and the Class's personal information to its advertiser partners." (Id. ¶ 121.) Because the Court finds that Plaintiffs fail to adequately allege the damages element of their breach of contract claim, the Court does not reach any other issues in regard to this claim.

[10] (See May 12 Order at 11 n.10 (rejecting Plaintiffs' theory that their personal information itself either "constitutes currency" or "is a form of property").)

[11] No. C 09-6032 PJH, 2011 WL 1361588 (N.D. Cal. Apr. 11, 2011).

[12] (Opp'n at 13.)

8

fact." Id. at *5. In light of the continuing absence of controlling authority, or even clear persuasive authority, in support of Plaintiffs' theory of damages, the Court finds that Plaintiffs have failed to show "actual and appreciable damages," and thus have failed to state a claim for breach of contract.

Accordingly, the Court finds that Plaintiffs fail to state a claim for breach of contract.

### 4. Cal. Civ. Code §§ 1572 and 1573

At issue is whether Plaintiffs state a claim under Cal. Civ. Code §§ 1572 and 1573.

Sections 1572 and 1573 deal with actual and constructive fraud. See Cal. Civ. Code §§ 1572, 1573. In California, the elements of a cause of action for fraud are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." Engalla v. Permanente Med. Group, 15 Cal. 4th 951, 974 (1997). To plead a cause of action for fraud under California law, a plaintiff must "establish damages," because "[d]eception without resulting loss is not actionable fraud." Leegin Creative Leather Products, Inc. v. Diaz, 131 Cal. App. 4th 1517, 1525 (Cal. Ct. App. 2005). Where a "claim of damages" is merely "speculative," it fails to support a cause of action for fraud. Id. at 1526.

Here, as discussed above, Plaintiffs' theory of damages is that they suffered "actual" damages due to the loss in "value" of their personally identifiable information. However, as discussed above, this theory is not supported by any controlling legal precedents, and as such is purely speculative. Under California law, such a theory of damages cannot support a cause of action for fraud. Diaz, 131 Cal. App. 4th at 1525-26. Thus, Plaintiffs have failed to state a claim for fraud.

Accordingly, the Court finds that Plaintiffs fail to state a claim under Cal. Civ. Code §§ 1572 and 1573.

### D. Conclusion

The Court GRANTS Defendant's Motion to Dismiss.

Because the Court has already granted Plaintiffs leave to amend to allege specific facts as to each of the claims discussed above, and because the Court finds that Plaintiffs continue to fail to

9

state a claim as to each of the claims, the Court finds that further amendment would be futile. Accordingly, the Amended Complaint is dismissed with prejudice.

Dated: November 22, 2011

JAMES WARE
United States District Chief Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Benjamin Harris Richman brichman@edelson.com
Charles Hyunchul Jung cjung@nassiri-jung.com
Christopher Lilliard Dore cdore@edelson.com
Donald Amamgbo damamgbo@amamgbolaw.com
Eric David Freed eric@freedweiss.com
Eric H. Gibbs ehg@girardgibbs.com
Francis M. Gregorek gregorek@whafh.com
James M. Penning jpenning@cooley.com
Jay Edelson jedelson@edelson.com
Jordan L. Lurie jlurie@weisslurie.com
Kassra Powell Nassiri knassiri@nassiri-jung.com
Matthew Dean Brown mbrown@cooley.com
Matthew Joseph Zevin mzevin@stanleyiola.com
Michael James Aschenbrener mja@aschenbrenerlaw.com
Reginald Von Terrell ReggieT2@aol.com
Reginald Von Terrell reggiet2@aol.com
Richard L. Seabolt rlseabolt@duanemorris.com
Sean Patrick Reis sreis@edelson.com
Sydney Jay Hall sydneyhalllawoffice@yahoo.com

**Dated:  November 22, 2011**          **Richard W. Wieking, Clerk**

                                        **By:     /s/ JW Chambers            **
                                              **Susan Imbriani**
                                              **Courtroom Deputy**

**United States District Court**
For the Northern District of California