UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: FACEBOOK PRIVACY LITIGATION | Case No.  10-cv-02389-RMW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART FACEBOOK'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 243, 293 |

Plaintiffs Katherine Pohl and Wendy Marfeo bring this putative class action against Facebook, Inc. for breach of contract and fraud. Facebook moves to dismiss for lack of Article III standing. Dkt. No. 243. Plaintiffs oppose the motion. Dkt. No. 270. Facebook filed a reply, and plaintiffs filed a surreply.[1] Dkt. Nos. 281, 293-1. A hearing was held on December 18, 2015. Having considered the parties' arguments, the court grants Facebook's motion to dismiss for lack of standing as to Ms. Pohl and denies Facebook's motion to dismiss for lack of standing as to Ms. Marfeo.

---

[1] Plaintiffs' motion for leave to file a surreply addressing nominal damages is granted. Facebook is correct that plaintiffs do not cite California Civil Code Section 3360 in the Third Amended Complaint, but plaintiffs do seek "nominal damages based on Facebook's breach" in the TAC. Dkt. No. 227 ¶ 67. Therefore, Facebook could have addressed the issue nominal damages in its motion to dismiss.

1

10-cv-02389-RMW
ORDER DENYING MOTION TO DISMISS
FC

## I. BACKGROUND

Facebook provides social networking services to its users free of charge. Dkt. No. 227, TAC ¶¶ 10, 11. Facebook users must register on the website using their real names. *Id*. ¶ 12. After registering, users may then post other personal information to a Facebook profile page. *Id.* ¶ 13. Facebook generates revenue through advertising. *Id*. ¶ 18. Facebook is able to target ads to particular demographics using the personal information provided by its registered users. *Id*. ¶¶ 26-27. Targeted advertising is valuable to Facebook's advertisers. *Id*. ¶¶ 26-27, 63, 65. According to Facebook, the "ad targeting is done entirely anonymously. If advertisers select demographic targeting for their ads, Facebook automatically matches those ads to the appropriate audience. Advertisers only receive anonymous data reports." *Id*. ¶ 28 (quoting Facebook's Privacy Guide). Plaintiffs allege that Facebook has "consistently and adamantly promised" not to share any user's specific identity or personally identifiable information ("PII") with its advertising partners. *Id*. ¶¶ 32, 27-31.

According to plaintiffs, Facebook's business model represents a bargain between Facebook and its users: "Facebook users provide their valuable PII to Facebook in exchange for access to facebook.com and for Facebook's promises not to disclose their PII to third parties without consent." *Id.* ¶¶ 16, 62, 67. Named plaintiffs Katherine Pohl and Wendy Marfeo have been registered Facebook users since at least 2008. *Id.* ¶¶ 4-5. Ms. Pohl and Ms. Marfeo claim that Facebook violated its own policies and promises by disclosing their "sensitive personally identifiable information" to advertisers. *Id.* ¶¶ 1-5. Specifically, plaintiffs allege that when they clicked on Facebook ads, Facebook sent "referer headers" to the advertisers that would allow the advertiser to identify the user who clicked the ad. *Id.* ¶¶ 34-39.

When an Internet user navigates to a website by clicking a link, the user's browser may send a "referer header" to the destination website's server. Dkt. No. 245, Jones Decl. ¶ 2. A "referer header" typically contains the URL of the website the user was visiting when he or she clicked the link. *Id.* Each Facebook user account is tied to a unique user ID number or username. TAC ¶ 14. Before July 2010, "if a Facebook user navigated the Facebook website in a particular

2
10-cv-02389-RMW
ORDER DENYING MOTION TO DISMISS
FC

way and clicked on a third-party advertisement linked to an external page, the resulting referer header may have included a user's Facebook username or user ID." Jones Decl. ¶ 5. A referer header containing a user ID or username from a referring Facebook profile page is not enough to identify the Facebook user who clicked on the ad; the same referer header would be generated for any user visiting that particular profile page, not just a user visiting his or her own profile page. *Id.* ¶ 5.

During the same timeframe, however, Facebook may have "included a particular string of characters in users' profile page URLs ('ref=profile')" if a "user took certain steps to navigate *to his or her own profile page*." *Id.* ¶ 6 (emphasis added). As a result, some referer headers sent to external advertisers included "both the 'ref=profile' string and the user ID or username of the user who clicked the ad." *Id.* ¶ 7; *see also* TAC ¶¶ 35-39. Facebook acknowledges that "in theory," a recipient of both the "ref=profile" string and a user ID or username would be able to identify the Facebook user who clicked on the ad. *Id.* ¶ 7; *see also* TAC ¶ 14. Plaintiffs assert two causes of action based on the transmission of these referer headers—breach of contract and fraud. TAC ¶¶ 58-73.

Several separate actions were originally filed against Facebook, and the cases were consolidated on August 10, 2010 under the caption *In re Facebook Privacy Litigation*. Dkt. No. 23. The consolidated class action complaint named David Gould and Mike Robertson as putative class representatives. Dkt. No. 36. The court dismissed plaintiffs' federal and state law claims and entered final judgment on November 22, 2011. Dkt. No. 106, 107. Plaintiff Mike Robertson appealed the dismissal. Dkt. No. 116. The Ninth Circuit reversed on two of the eight dismissed claims, finding plaintiffs' damages allegations sufficient to support their breach of contract and fraud claims. Dkt. No. 122 at 2. Specifically, the Ninth Circuit cited plaintiffs' allegations that "the information disclosed by Facebook can be used to obtain personal information about plaintiffs," and that plaintiffs were harmed by both "the dissemination of their personal information and by losing the sales value of that information." *Id.* The case was remanded with Mr. Robertson as the sole named plaintiff.

3
10-cv-02389-RMW
ORDER DENYING MOTION TO DISMISS
FC

1   Mr. Robertson moved for leave to amend the FAC to add Katherine Pohl as named
2   plaintiff and to seek nominal damages and disgorgement. Dkt. No. 138. The court granted leave to
3   amend on February 13, 2015. *See* Dkt. No. 142. The parties then stipulated to Mr. Robertson's
4   voluntary dismissal on March 20, 2015. Dkt No. 146. On March 27, 2015, Ms. Pohl moved for
5   leave to file a third amended complaint adding Wendy Marfeo as a named plaintiff. Dkt. No. 148.
6   The court granted leave to add Ms. Marfeo on May 22, 2015, treating the motion as a request for
7   substitution of a named plaintiff following the mooting of a prior plaintiff's claims. *See* Dkt. No.
8   226.

Facebook moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that Ms. Pohl and Ms. Marfeo lack Article III standing to bring this suit because they are unable to demonstrate that they have suffered injury in fact. Facebook further argues that the court should dismiss this case for lack of standing because neither Mr. Robertson nor Ms. Pohl had standing at the time Ms. Marfeo was added as a named plaintiff.

## II.   ANALYSIS

Plaintiffs have the burden to establish standing. *See WildEarth Guardians v. U.S. Dep't of Agric.*, 795 F.3d 1148, 1154 (9th Cir. 2015). "To establish standing, a plaintiff must show that (1) he or she has suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision." *Id.* (quoting *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1225 (9th Cir. 2008) (citing *Lujan v. Defender. of Wildlife*, 504 U.S. 555, 560–61 (1992))). Facebook argues that neither Ms. Pohl nor Ms. Marfeo can establish the first of these requirements—injury in fact.

To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotations omitted). "In class actions, the named representatives must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong

4
10-cv-02389-RMW
ORDER DENYING MOTION TO DISMISS
FC

and which they purport to represent." *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (quoting *Pence v. Andrus*, 586 F.2d 733, 736-37 (9th Cir. 1978)).

Because standing is "an indispensable part" of a plaintiff's case, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. Class discovery is closed, and plaintiffs have moved to certify the class. *See* Dkt. Nos. 236, 261. At this stage, plaintiffs "must show standing 'through evidentiary proof.'" *Moore v. Apple Inc.*, 309 F.R.D. 532, 539 (N.D. Cal. 2015) (quoting *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013)); *see also Evans v. Linden Research, Inc.*, No. C 11-01078 DMR, 2012 WL 5877579, at *6 (N.D. Cal. Nov. 20, 2012) ("On a motion for class certification, Plaintiffs must demonstrate, not merely allege, that they have suffered an injury-in-fact to establish Article III standing. . . .") (citing *Nelsen v. King Cnty.*, 895 F.2d 1248, 1249-50 (9th Cir. 1990) ("Standing is a jurisdictional element that must be satisfied prior to class certification.")).

### A. Plaintiff Katherine Pohl

Ms. Pohl's claims are dismissed for lack of standing. Plaintiffs' breach of contract and fraud claims both rely on allegations that Facebook disclosed plaintiffs' personal information to third party advertisers. *See* TAC ¶¶ 66, 71. Facebook's ad-click data shows that Ms. Pohl's only ad click during the class period directed Ms. Pohl to the advertiser's Facebook page, rather than the advertiser's external website. Therefore, the referer header associated with Ms. Pohl's ad click would have been sent to a Facebook server, rather than any third party advertiser's server. Plaintiffs concede that "the information Facebook has produced to date indicates that Pohl's personal information was not transmitted to an advertiser's external website." Ms. Pohl, therefore, lacks standing and cannot represent the putative class in this case. *See Lierboe*, 350 F.3d at 1022 (plaintiff without standing to bring claim "cannot represent others who may have such a claim, and her bid to serve as a class representative must fail").

### B. Plaintiff Wendy Marfeo

Plaintiffs submit three theories for Ms. Marfeo's injury in fact: 1) there is a credible threat

that Ms. Marfeo will be harmed in the future by the release of her personal information, 2) Ms. Marfeo was denied the benefit of the bargain she made with Facebook, and 3) Ms. Marfeo is entitled to seek nominal damages for breach of contract.

### 1. Threat of Future Harm

Plaintiffs have not established injury in fact through threat of future harm. At the hearing, plaintiffs alleged injury via a "credible threat of future harm by releasing this information and making it available." Dkt. No. 321 at 13:23-25; 19:12-13. Allegations of "possible future injury" are not sufficient to establish injury in fact; the "threatened injury must be certainly impending." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). Plaintiffs do not identify any evidence to show that a release of Ms. Marfeo's personal information is impending. Plaintiffs' evidence of disclosure is limited to Ms. Marfeo's ad clicks in 2009 and 2010 and the resulting referer headers. *See* Dkt. No. 270 at 9-10 (citing Dkt. 245, Jones Decl. ¶ 20). Evidence from more than five years ago, with no suggestion of disclosure since then, cannot establish that a release of Ms. Marfeo's personal information is certainly impending.

### 2. Benefit of the Bargain

Plaintiffs allege that Ms. Marfeo suffered injury in fact because she did not receive the promised confidentiality for which she bargained. Facebook challenges plaintiffs' benefit of the bargain theory on three grounds: 1) Facebook never agreed to pay users in exchange for consent to disclose information, 2) plaintiffs cannot establish harm without evidence of receipt or use by a third party, and 3) plaintiffs cannot establish breach without evidence of receipt by a third party. The court is not persuaded by Facebook's arguments. Although Ms. Marfeo may have significant difficulty proving damages under the benefit of the bargain theory, she has established standing.

The court is not persuaded that plaintiffs' benefit of the bargain is premised on any promise by Facebook to pay users for disclosure on per-transaction basis. Plaintiffs confirmed at the hearing that plaintiffs are not alleging a promise to pay on a per-transaction basis, emphasizing that any discussion of what Ms. Marfeo might have received from advertisers in exchange for her

consent is relevant only to ascertaining the value of the benefit of bargain that Ms. Marfeo was allegedly denied. Dkt. No. 321 at 10:15-11:17("We absolutely have not said that the contract contains a promise to be paid by Facebook if there's a disclosure. The promise is not to make a disclosure absent consent. . . . We have presented expert testimony that explains how the court could allow the plaintiffs to establish the value of the consent."); *see also* 14:15-15:5. Plaintiffs' representations at the hearing echo the benefit of the bargain theory set forth in the TAC: "Plaintiffs and each class member gave up something of value, PII, in exchange *for access to Facebook and Facebook's privacy promises*. Facebook materially breached the contracts by violating its privacy terms, thus depriving Plaintiffs and Class members the benefit of the bargain." TAC ¶ 67. The court is skeptical about plaintiffs' ability to establish the value of the benefit allegedly denied to Ms. Marfeo, but the court is satisfied that plaintiffs have alleged Ms. Marfeo received less than she bargained for from Facebook.

Nor is the court is persuaded that plaintiffs must establish third party receipt or use under a benefit of the bargain theory. While plaintiff must establish that Ms. Marfeo was denied a "benefit" of the bargain, there is no requirement that the benefit relate to third party receipt or use. *See, e.g.*, *Cain v. Redbox Automated Retail, LLC*, 981 F. Supp. 2d 674, 687 (E.D. Mich. 2013) (plaintiffs sufficiently alleged benefit of the bargain damages by alleging that they suffered monetary harm because "a portion of the price of each Redbox rental paid for by Plaintiffs . . . was intended to ensure the confidentiality of Plaintiffs' . . . Personal Viewing Information"). Plaintiffs allege that Ms. Marfeo did not receive the full benefit of her bargain because Facebook transmitted her personal information to advertisers and that the value of the benefit she was denied can be ascertained by measuring the value of her personal information. *See* TAC ¶ 67. The cases cited by Facebook for the proposition that actual receipt or use is required for injury are inapposite because they do not address allegations of harm under a benefit of the bargain theory. *See Fitzhenry v. ADT Corp.*, No. 14-80180, 2014 WL 6663379, at *7 n.9 (S.D. Fla. Nov. 3, 2014) (addressing whether message violates the Telephone Consumer Protection Act if not heard or recorded by answering machine); *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45

1  F. Supp. 3d 14, 28 (D.D.C. 2014) (finding plaintiffs lack standing for invasion of privacy claim because they do not contend that their "personal information has been viewed nor that their information has been exposed in a way that would facilitate easy, imminent access").

Similarly, the court is not convinced that plaintiffs' theory of harm is disconnected from Facebook's alleged breach. Facebook argues that a promise not to "share" cannot be breached unless the information reaches a third party. However, Facebook notes in its reply brief that "it is impossible for [Facebook] to speak to whether advertisers received any referer headers." Dkt. No. 281 at 5. By the same reasoning, it is impossible for Facebook to make promises about whether advertisers receive referer headers; Facebook can only promise not to transmit the information. For purposes of this motion, Facebook does not challenge plaintiffs' evidence of transmission, and it is Facebook's *transmission* that plaintiffs allege caused Ms. Marfeo to be denied the benefit of the bargain. *See* TAC ¶ 37 ("Facebook's system sends this information to advertisers despite Facebook's Privacy Policy and its other representations as to users' privacy vis-à-vis advertisers.").

### 3. Nominal Damages for Breach of Contract

Plaintiffs also argue that Ms. Marfeo has standing because "failure to perform a contractual duty is, in itself, a legal wrong that is fully distinct from the actual damages," for which Ms. Marfeo seeks nominal damages. *Sweet v. Johnson*, 169 Cal. App. 2d 630, 632 (1959); *see also* Cal. Civ. Code § 3360 ("When a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages."). Facebook points out that Article III standing requirements do not apply to state court actions and argues that the availability of nominal damages does not relieve Ms. Marfeo of the obligation to show injury in fact. *See In re Google, Inc. Privacy Policy Litig.*, No. C-12-01382-PSG, 2013 WL 6248499, at *6 (N.D. Cal. 2013) (rejecting breach of contract as a separate basis for injury in fact because nominal damages are not available in California and plaintiffs did not allege any other injury resulting from breach); *Meneses v. U-Haul Int'l, Inc.*, No. C-11-03615 DMR, 2012 WL 669518, at *5 (N.D. Cal. 2012) ("Nominal damages . . . do not suffice to show legally cognizable injury."). This court, however, is

persuaded that a California breach of contract claim for nominal damages may support Article III standing.

Facebook argues that nominal damages cannot satisfy the injury in fact requirement because actual damages are a required element for any California breach of contract claim. Facebook cites decisions from the Ninth Circuit, as well as a decision from this court. *See Ruiz v. Gap, Inc.*, 380 F. App'x 689, 692 (9th Cir. 2010) ("under California law, a breach of contract claim requires a showing of appreciable and actual damage") (quoting *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000)); *In re eBay Litig.*, No. 07-CV-2198 RMW, 2012 WL 3945524, at *5 (N.D. Cal. Sept. 10, 2012) (noting that the Ninth Circuit rejected the holding of *Sweet* in *Aguilera*). According to Facebook, these cases are consistent with section 3360 because the statute is designed to compensate plaintiffs who have suffered injuries that cannot be quantified, rather than to compensate plaintiffs who cannot show injury at all. *See Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 990-91 (N.D. Cal. 2015) ("Section 3360 sets forth the rule that a plaintiff who has suffered an injury, but whose damages are speculative, is entitled to nominal damages. But the statute does not relieve the plaintiff of proving injury.") (citation omitted).

Plaintiffs, on the other hand, argue that the Ninth Circuit misinterpreted dicta from *Aguilera* in deciding *Ruiz*, which is an unpublished decision.[2] Specifically, plaintiffs argue that *Aguilera* considered actual damages only in determining whether and when a breach occurred, not whether nominal damages are available once breach is established. Therefore, according to plaintiffs, there is no Ninth Circuit precedent in conflict with the holding of *Sweet* that nominal contract damages are recoverable in the absence of actual damages.

California case law reveals some uncertainty about whether actual damages are a necessary

---

[2] At the hearing, plaintiffs also noted that the *Ruiz* court reached the damages element of the contract claim only *after* determining that plaintiff had alleged a credible threat of future identity theft sufficient to support Article III standing. Dkt. No. 321 at 13:12-20. Whether or not *Ruiz* was correctly decided, it does not hold that a plaintiff must prove actual contract damages in order to establish Article III standing.

element for a breach of contract claim. *Compare Patent Scaffolding Co. v. William Simpson Const. Co.*, 256 Cal. App. 2d 506, 511 (1967) ("A breach of contract without damage is not actionable."), *with Sweet*, 169 Cal. App. 2d at 632 ("plaintiff is entitled to recover nominal damages for the breach of a contract, despite inability to show that actual damage was inflicted upon him"). This uncertainty is reflected in Ninth Circuit decisions. *Compare Ruiz*, 380 F. App'x at 692 (affirming summary judgment on contract claim because plaintiff did not adduce evidence of actual damage), *and Aguilera*, 223 F.3d at 1015 ("Under California law, a breach of contract claim requires a showing of appreciable and actual damage"), *with Raiser v. Ventura Coll. of Law*, 488 F. App'x 219, 222 (9th Cir. 2012) (finding dismissal of contract claim improper "because, under California law, inability to show actual damages does not preclude recovery for breach of contract"), *and Haagen v. Saks & Co.*, 160 F. App'x 621, 624 (9th Cir. 2005) ("when a breach of duty has caused no appreciable detriment to the parties affected, they may yet recover nominal damages"). The same uncertainty is reflected in the decisions of this court. *Compare In re eBay Litig.*, 2012 WL 3945524 at *5 (declining to sustain contract claim "on the basis of nominal damages alone"), *with Farhang v. Indian Inst. of Tech., Kharagpur*, No. C–08–02658 RMW, 2010 WL 2228936, at * 7 (N.D. Cal. June 1, 2010) (declining to dismiss contract claim for failure to state a claim because nominal damages would be available even if plaintiff could not prove actual damages); *see also* Dkt. No. 142 at 4 n.2 ("The court expresses no opinion at this time as to whether nominal damages are sufficient to fulfill the damages element of a California state breach of contract claim.").

While the court continues to find the issue "somewhat troubling," *In re eBay Litig.*, 2012 WL 3945524 at *5, the text of section 3360 itself permits recovery of nominal damages even if plaintiff suffers "no appreciable damage." In *Patent Scaffolding*, cited by the Ninth Circuit in *Aguilera*, the California Court of Appeal examined whether plaintiff could recover for damages "not causally connected with the breach of a contract" rather than the availability of nominal damages in the absence of actual damage. 256 Cal. App. 2d at 511. Similarly in *Aguilera* itself, the Ninth Circuit examined actual damages with respect to determining breach, rather than the

10

availability of nominal damages. 223 F.3d at 1015. Other California cases provide additional support for the view that nominal damages may satisfy the damages element of a contract claim. *See, e.g.*, *McCarty v. Beach*, 10 Cal. 461, 464 (1858) ("For the breach of a contract an action lies, though no actual damages be sustained."); *Midland Pac. Bldg. Corp. v. King*, 157 Cal. App. 4th 264, 275 (2007) (plaintiff "has shown a prima facie case for breach of contract" in absence of actual damage) (citing Cal. Civ. Code § 3360 and *Sweet*, 169 Cal. App. 2d at 632)); *Sill Properties, Inc. v. CMAG, Inc.*, 219 Cal. App. 2d 42, 55 (1963) ("appellant unquestionably was entitled to recover nominal damages for the breach of the lease, despite his inability to show that he suffered actual damage"). The court concludes that *Aguilera* and *Ruiz*, which are not binding on this court on questions of California law, do not defeat a plaintiff's ability to recover nominal damages for breach of contract even in the absence of actual damages. Plaintiffs, therefore, have alleged "a legal wrong that is fully distinct from the actual damages." *Sweet*, 169 Cal. App. 2d at 632.

The injury alleged is "concrete" in that plaintiffs specify the contractual terms to which Ms. Marfeo agreed and the manner of breach by Facebook. The breach is "particularized" in that it involves disclosure of Ms. Marfeo's own personal information and "actual" in that plaintiffs claim the breach has already occurred. Facebook does not challenge plaintiffs' evidence that Facebook had a contractual duty not to share plaintiffs' personal information, at least for purposes of this motion. *See* TAC ¶¶ 27-32 (citing Facebook representations). Nor does Facebook challenge plaintiffs' evidence that Ms. Marfeo's personal information was transmitted to third parties. *See* Dkt. No. 243 at 5 n.5. Therefore, plaintiffs have established injury in fact through Ms. Marfeo's breach of contract claim for nominal damages.

### C.   Plaintiffs Mike Robertson and Katherine Pohl at Time of Substitution

Facebook argues that this court lacked jurisdiction to allow the substitution of Ms. Marfeo as a named plaintiff on May 22, 2015. Facebook's motion to dismiss for lack of standing at the time of Ms. Marfeo's substitution is denied.

Facebook's assertion that both Ms. Pohl and Mr. Robertson lacked standing one year ago

11
10-cv-02389-RMW
ORDER DENYING MOTION TO DISMISS
FC

does not provide a basis for dismissal at this juncture. The court now determines that Ms. Pohl lacks standing, but that Ms. Marfeo has standing. The court is not aware of any authority permitting retroactive dismissal for lack of standing where a currently named plaintiff—Ms. Marfeo—has standing. Such a dismissal would conflict with the Supreme Court's guidance that standing should be evaluated in accordance "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. Ms. Pohl and Mr. Robertson may or may not have been able to satisfy the requirements for Article III standing before the substitution of Ms. Marfeo[3]—the court notes that Facebook's standing arguments are the same with respect to Mr. Robertson and Ms. Marfeo in the instant motion—but in any case, today's dismissal of Ms. Pohl does not require dismissal dating back to May 2015.

The court also declines to reconsider its previous order granting leave to amend to add Ms. Marfeo as a named plaintiff. Facebook argues that, even if Mr. Robertson previously had standing, the court lacked jurisdiction to permit Ms. Marfeo's substitution once Mr. Robertson mooted his own claims by voluntarily dismissing with prejudice. Facebook made the same argument in supplemental briefing in opposition to Ms. Pohl's motion for leave to amend. *See* Dkt. No. 221 at 1 ("Finally, even if Robertson's standing were accepted, his voluntary dismissal with prejudice mooted his claim, eliminating any subject-matter jurisdiction the Court previously had."). The court found that "the case need not be dismissed on this basis" because Mr. Robertson's "voluntary dismissal rendered his claims moot," and treated Ms. Pohl's motion for leave to amend as a motion to substitute Ms. Marfeo as a named plaintiff following the mooting of Mr. Robertson's claims. Dkt. No. 226 at 7. Any motion for reconsideration of an interlocutory order

---

[3] Facebook's motion to dismiss Mr. Robertson's claims for lack of standing at the pleading stage was denied. Dkt. No. 91. Facebook did not move to dismiss Ms. Pohl's claims for lack of standing until filing the instant motion. In opposition to Ms. Pohl's motion for leave to amend, Facebook argued that this case should be dismissed based on Ms. Pohl's lack of standing and Mr. Robertson's failure to establish his standing before his voluntary dismissal. *See generally* Dkt. Nos. 219 (hearing transcript), 221 (Facebook's supplemental briefing). The court, however, explicitly declined to address standing, treating Ms. Pohl's motion for leave to amend as a motion to substitute Ms. Marfeo as a named plaintiff following the mooting of Mr. Robertson's claims. *See* Dkt. No. 226 at 7.

1  must be made in accordance with the requirements of Civil Local Rule 7-9.

2  **III.  CONCLUSION**

3  For these reasons, Facebook's motion to dismiss for lack of standing as to Ms. Pohl is

4  granted. Facebook's motion to dismiss for lack of standing as to Ms. Marfeo is denied. Facebook's

5  motion to dismiss for lack of standing as to Ms. Pohl and Mr. Robertson at the time of substitution

6  is denied.

7  **IT IS SO ORDERED.**

8  Dated: June 28, 2016



Ronald M. Whyte
United States District Judge

13

10-cv-02389-RMW
ORDER DENYING MOTION TO DISMISS
FC